BUCHALTER LLP
ARTIN BETPERA (SBN: 244477)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant
Bonneville International Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AUSSIEKER,<br><br>            Plaintiff,<br><br>      vs.<br><br>BONNEVILLE INTERNATIONAL CORPORATION,<br><br>            Defendant. | Case No. 3:26-cv-01899-JD<br>*Assigned to the Honorable James Donato*<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>DATE:  July 2, 2026<br>TIME:   10:00 a.m.<br>CTRM:  11, 19th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on July 2, 2026, at 10:00 a.m., or as soon thereafter as the Court's schedule permits, before the Honorable James Donato, in Courtroom 11, 19th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Bonneville International Corporation ("Defendant" or "Bonneville") will and hereby does move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's complaint.  This motion is brought on the grounds that Plaintiff's two causes of action, both of which are brought pursuant to the private right of action for "telephone calls" under 47 U.S.C. § 227(c)(5), fail as a matter of law because they are based on text messages, and not telephone calls allegedly sent by Defendant to Plaintiff.

This motion is based upon this notice, the memorandum of points and authorities, the filings in this action to date, and any other matter that may be properly considered by the Court at the hearing of this motion.

DATED: May 26, 2026                    BUCHALTER LLP


                                       By:  /s/ Artin Betpera
                                       _____
                                            ARTIN BETPERA

                                           Attorneys for Defendant
                                       Bonneville International Corporation

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................8

II. SUMMARY OF PLAINTIFF'S COMPLAINT ...............................................8

III. LEGAL STANDARD............................................................................................9

IV. DISCUSSION......................................................................................................10

    A. Congress Passed the TCPA in 1991 to Regulate Certain Telephone Calls................................................................................................................10

    B. The Plain Language of 47 U.S.C. § 227(c)(5) Authorizes Suit for "Telephone Calls" that Violate the TCPA, Not for "Text Messages".........................................................................................................11

    C. The FCC's Declaratory Rulings Do Not Support Interpreting the Words "Telephone Call" in 47 U.S.C. § 227(c)(5) to Mean the Words "Text Message" ............................................................................15

    D. The Supreme Court's Statutory Analysis in *Wisconsin Central Ltd. v. United States* Shows Why the TCPA's Narrower Term "Telephone Call" Must be Given its Plain Meaning Distinct from the Broader Term "Any Call" ...................................................................18

        1. The Statutory Structure in Wisconsin Central Parallels the TCPA.................................................................................................18

        2. The Presumption That Different Language Conveys Different Meaning Applies with Particular Force Here ...........19

        3. The Modifier "Telephone" Limits the Noun "Call" in the TCPA, Just as "Money" Limited "Remuneration" in the RRTA examined by the Supreme Court in *Wisconsin Central*................................................................................................19

        4. The Court Should Not Rewrite the Statute By Speculation .....21

    E. The Ninth Circuit's *Satterfield* Opinion Does Not Control the Statutory Interpretation of "Telephone Call" in Section 227(c)(5) ....22

V. CONCLUSION ...................................................................................................25

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................10

*Beisler v. Comm'r*,
    814 F.2d 1304 (9th Cir. 1987)..................................................................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................10

*Cheneau v. Garland*,
    997 F.3d 916 (9th Cir. 2021).......................................................... 13, 23, 24

*CVS Health Corp. v. Vividus, LLC*,
    878 F.3d 703 (9th Cir. 2017)....................................................................12

*Davis v. CVS Pharmacy, Inc.*,
    797 F. Supp. 3d 1270 (N.D. Fla. 2025) ........................................ 12, 13, 16, 17

*Dilanyan v. Hugo Boss Fashions, Inc.*,
    No. 2:25-CV-05093-JLS-BFM, 2025 WL 3549868 (C.D. Cal. Dec.
    3, 2025)....................................................................................................24

*Esquivel v. Mona Lee, Inc.*,
    No. 3:25-CV-00607-H-BLM, 2025 WL 3275607 (S.D. Cal. Nov.
    24, 2025)..................................................................................................24

*Henson v. Santander Consumer USA Inc.*,
    582 U.S. 79 (2017)..............................................................................19, 21

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987)..................................................................................19

*Jones v. Blackstone Med. Servs., LLC*,
    792 F. Supp. 3d 894 (C.D. Ill. 2025).............................................. 12, 13, 16, 17

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001).....................................................................10

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024)...................................................................... 15, 17, 22, 25

*Marx v. General Revenue Corp.,*
    568 U.S. 371 ..........................................................................................24

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
    606 U.S. 146 (2025)..........................................................................10, 11

*Mims v. Arrow Fin. Services, LLC,*
    565 U.S. 368 (2012)..................................................................................10

*Perrin v. United States,*
    444 U.S. 37 (1979)....................................................................................21

*Richards v. Fashion Nova, LLC,*
    No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568 (S.D. Ind. Mar.
    26, 2026)...................................................................................... 12, 14, 17

*Satterfield v. Simon & Shuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009)..................................................... 18, 22, 24

*Taha v. Momentive Software, Inc.,*
    No. 8:25-CV-02330-DOC-JDE, 2026 WL 974297 (C.D. Cal. Mar.
    11, 2026).................................................................................................24

*United States v. TRW Rifle, et al.*
    447 F.3d 686 (9th Cir. 2006).................................................................12

*Wilson v. MEDVIDI Inc.,*
    No. 5:25-cv-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7,
    2025) ......................................................................................................24

*Wisconsin Central Ltd v. United States,*
    585 U.S. 274 (2018)................................................................ 18, 19, 20, 21, 24

**Federal Statutes**

26 U.S.C. § 3121(a) ......................................................................................18

26 U.S.C. § 3231(e)(1)...................................................................................18

47 U.S.C. § 227(*i*)...................................................................................13, 14

5

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION**          Case No. 3:26-cv-01899-JD
**TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

47 U.S.C § 227(b) ......................................................... 10, 11, 14, 15, 16, 19, 22, 23, 24, 25

47 U.S.C. § 227(b)(1)(A) ..................................................................................... 11, 18, 22

47 U.S.C. § 227(b)(2) ...................................................................................................... 11

47 U.S.C. § 227(b)(3) ...................................................................................................... 11

47 U.S.C. § 227(c) ................................................................. 8, 9, 10, 14, 15, 16, 17, 19, 25

47 U.S.C. § 227(c)(1) ......................................................................................................... 8

47 U.S.C. § 227(c)(2) ...................................................................................................... 11

47 U.S.C. § 227(c)(5) ............. 8, 9, 11, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25

47 U.S.C. § 227(e) ..................................................................................................... 13, 14

47 U.S.C. § 227(e)(8)(C) ................................................................................................ 13

47 U.S.C. § 227(h) ..................................................................................................... 13, 14

47 U.S.C. § 227(h)(A)(i) ................................................................................................. 14

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 9

**Federal Regulations**

47 C.F.R. § 64.1200(a) ..................................................................................................... 11

47 C.F.R. § 64.1200(a)(9) ................................................................................................ 16

47 C.F.R. § 64.1200(b) ..................................................................................................... 11

47 C.F.R. § 64.1200(c) ....................................................................................................... 9

47 C.F.R. § 64.1200(c)(2) ................................................................................................ 11

47 C.F.R. § 64.1200(d) ....................................................................................................... 9

47 C.F.R. § 64.1200(e) ..................................................................................................... 16

**Other Authorities**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal
Texts 344 (2012) ........................................................................................................... 17

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD

The First Text Message Celebrates 25 Years, available at
    https://www.npr.org/2017/12/04/568393428/the-first-text-
    messages-celebrates-25-years ...................................................................12

In re Rules and Reguls., Implementing the Tel. Consumer Prot. Act of
    1991, 18 FCC Rcd. 14014, 14115 at ¶ 165 (2003) ...........................................15

The Pallone-Thune Telephone Robocall Abuse Criminal Enforcement
    and Deterrence Act, Pub. L. No. 116-105, Dec. 30, 2019, 133 Stat.
    3274.......................................................................................................13

Telephone, American Heritage Dictionary (5th Ed. 2012), available at
    https://ahdictionary.com/word/search.html?q=telephone (last
    visited May 22, 2026) ...................................................................20, 23

Telephone, Merriam-Webster's Collegiate Dictionary (11th Ed. 2019),
    available at https://www.merriam-
    webster.com/dictionary/telephone (last visited May 22, 2026)...................20, 23

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

When Congress created a private right of action under the Telephone Consumer Protection Act ("TCPA") to sue for unwanted "telephone calls," did it also intend those words to mean "text messages"? The answer to this question determines whether Plaintiff has a private right of action to sue for alleged violations of the TCPA from allegedly receiving text messages from Bonneville. As Bonneville will show, the answer to this dispositive question of law is *no* — Congress did not intend to create a private right of action covering text messages, a technology that did not exist when it passed the TCPA.

When Congress passed the TCPA in 1991, its enabling statute in 47 U.S.C. § 227(c)(1) directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights." *Id.* Congress also created a private right of action covering any person "who has received more than one *telephone call* within any 12-month period" in violation of the rules promulgated by the FCC under Section 227(c). 47 U.S.C. § 227(c)(5) (emphasis added).

Invoking this private right of action for unwanted telephone calls, Plaintiff now sues Bonneville for allegedly sending text messages allegedly in violation of the TCPA. But the plain language of the private right of action in Section 227(c)(5) is limited to persons who have received *telephone calls*, not text messages. These are not semantics; this is fundamental statutory construction. Plaintiff's two counts of alleged violations of the TCPA fail as a matter of law since he has not alleged receiving any telephone calls from Bonneville under the plain language of Section 227(c). The Court should grant Bonneville's Motion to Dismiss.

## II.    SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that, between November 2023 and October 2025, he received at least six telemarketing text messages from Bonneville promoting its KNCI radio station, including sweepstakes promotions and contests. Compl. ¶¶ 19–26. Plaintiff

Buchalter LLP
Irvine

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

8

Case No. 3:26-cv-01899-JD

alleges he did not give Bonneville consent to send him these text messages, and his telephone number was registered with the National Do Not Call Registry on September 21, 2006. Compl. ¶¶ 13, 18. He also says he replied with "STOP" after the third text message, claiming he received confirmation that he had successfully been unsubscribed but subsequently received text messages in October 2025. Compl. ¶¶ 21–23.

Based on these allegations, Plaintiff asserts two causes of action against Bonneville under 47 U.S.C. § 227(c). His first cause of action alleges violations of the TCPA's national do-not-call provisions under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). Compl. ¶¶ 49–54. His second alleges violations of the TCPA's internal do-not-call provisions under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d). Compl. ¶¶ 55–58. Plaintiff also wants to try to certify two putative classes, defined as:

> National DNC Class: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of its goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> Internal Do Not Call Class: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

Compl. ¶ 39.

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Dismissal is appropriate when the complaint fails to state a claim on which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the alleged facts allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

The plausibility standard "is not akin to a 'probability requirement'" and demands more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. Complaints that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are thus insufficient. *Twombly*, 550 U.S. at 555.

## IV.    DISCUSSION

### A.    Congress Passed the TCPA in 1991 to Regulate Certain Telephone Calls

Passed in 1991, the TCPA "bans certain invasive telemarketing practices and directs the Federal Communications Commission to prescribe implementing regulations." *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 370 (2012).

The Supreme Court recently observed that one slice of the TCPA's provisions "has spawned significant TCPA litigation" over "unwanted faxes" *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 149 (2025). A combination of four factors incentivizes so much litigation: (1) the "private right of action," (2) the "statutory minimum damages for each violation," (3) the "number of violations that a business can quickly rack up," and (4) the "class action device." *Id.*

The same can be said of the TCPA's often litigated prohibitions on telephone calls made with certain types of technology under 47 U.S.C § 227(b), and telephone calls to certain types of numbers under Section 227(c) registered on the National "Do

BUCHALTER LLP
IRVINE

DEFENDANT'S NOTICE OF MOTION AND MOTION    Case No. 3:26-cv-01899-JD
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Not Call" Registry (DNC).

47 U.S.C. § 227(b) prohibits, with some exceptions, making calls "using any automatic telephone dialing system or artificial or prerecorded voice" to enumerated types of telephone lines, including cellular telephones. 47 U.S.C. § 227(b)(1)(A). Under 47 U.S.C. § 227(b)(2), Congress directed the FCC to "prescribe regulations to implement the requirements of" Section 227(b). The FCC promulgates its regulations in 47 C.F.R. § 64.1200(a) and (b). 47 U.S.C. § 227(b)(3) permits private right of action by any person for "an action based on a violation of [Section 227(b)] or the regulations prescribed [by the FCC] under [Section 227(b).]"

Under 47 U.S.C. § 227(c)(2), Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Under that authority, the FCC promulgated regulations which prohibit, with some exceptions, making "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). 47 U.S.C. § 227(c)(5) permits a private right of action by any "person who has received more than one telephone call within any 12-month period by … the same entity in violation of the regulations prescribed under this subsection."

**B.    The Plain Language of 47 U.S.C. § 227(c)(5) Authorizes Suit for "Telephone Calls" that Violate the TCPA, Not for "Text Messages"**

As the Supreme Court recently explained, "In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, *supra*,

606 U.S. at 155.

As with all questions of statutory interpretation, "[o]ur analysis begins with the language of the statute." *United States v. TRW Rifle, et al.* 447 F.3d 686, 689 (9th Cir. 2006). "When interpreting a statute, we must give words their ordinary or natural meaning." *Id*. (internal quotations and citation omitted). When interpreting undefined terms in a statute, as is the case here, "we follow the common practice of consulting dictionary definitions to clarify their ordinary meaning and look to how the terms were defined at the time the statute was adopted." *Id*. (internal quotations and citation omitted). "If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) (citation omitted).

Congress passed the TCPA in 1991 when cell phones were the size of bricks and text messages had not been invented. "The first text message was transmitted Dec. 3, 1992. Engineer Neil Papworth typed 'merry Christmas' on a computer and sent the first SMS message to the cellphone of Vodafone director Richard Jarvis."[1] Since words in a statute are defined "at the time the statute was adopted," it is impossible for Congress to have meant that a "telephone call" was a "text message." The technology did not exist when Congress passed the TCPA.

"Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025); see also *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("no ordinary person would think of a text message as a 'telephone call.' This conclusion — supported by the ordinary public meaning at the time of the provision's enactment — is enough to end this case."); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *2-3 (S.D. Ind. Mar. 26, 2026) (same).

___

[1] See The First Text Message Celebrates 25 Years, available at https://www.npr.org/2017/12/04/568393428/the-first-text-messages-celebrates-25-years [https://perma.cc/K6R4-RH3E].

12

Fast forward to present day when telephone calls and text messages are ubiquitous communications technology. In common parlance, the words "telephone call" means something different than "text message." *Jones*, 792 F. Supp. 3d at 899–900; *Davis*, 797 F. Supp. 3d at 1273 ("no ordinary person would think of a text message as a 'telephone call.'") Would anyone understand the statement that "Sally sent me a text message inviting me over" to mean "Sally sent me a telephone call inviting me over"? The answer is no. *Id*. As observed in *Jones*, the words "text message" are absent from Section 227(c)(5): "[n]owhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones*, 792 F. Supp. 3d at 901. **The inverse is also true**: the TCPA, as amended in 2019, has a definition of "text message" which expressly *excludes* "telephone calls." 47 U.S.C. § 227(e)(8)(C).

In 2019, Congress passed the TRACED Act which amended the TCPA to include certain provisions about caller identification and reporting requirements for TCPA violations.[2] Passed well after the advent of text messages, TRACED created rules centered on caller identification and information reporting, which selectively apply to "calls" and "text messages." 47 U.S.C. § 227(e), (h) & (*i*).

In Section 227(e), Congress defined "text message" to mean "a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number or N11 service code," but expressly excluding "a real-time, two-way voice … communication." 47 U.S.C. § 227(e)(8)(C). What type of technology fits the description of a real-time, two-way voice communication? A telephone call. By defining the words "text message" to expressly *exclude* "telephone calls," Congress recognized these terms have different meanings and describe distinct telecommunications technology. *Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021) ("when the legislature uses certain language in one part of the statute and

---

[2] The Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, Dec. 30, 2019, 133 Stat. 3274.

BUCHALTER LLP
IRVINE

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]                    Case No. 3:26-cv-01899-JD

different language in another, the court assumes different meanings were intended."); see also *Richards*, 2026 WL 847568, at \*4 ("The reference to text messages in § 227(e) shows that if Congress had wanted § 227(c) to apply to text messages, it knew how to say so.")

In TRACED, Congress also created selective reporting and information-sharing requirements for "calls" and "text messages" sent in violation of the TCPA's various subsections. 47 U.S.C. § 227(h) & (*i*).[3] Nowhere in Section 227(h) or (*i*) did Congress create reporting requirements about "text messages" sent under Section 227(c). Instead, Congress created information-sharing protocols for information relating to "a call or text message" sent in violation of Section 227(b) and (e). Noticeably absent from these requirements is information relating to a "text message" sent in supposed violation of Section 227(c) as suggested by Plaintiff's pleading.

Instead, when it came to Section 227(c), Congress was solely interested in receiving information about "a call" made in violation of Section 227(c). 47 U.S.C. § 227(h)(A)(i). These amendments show Congress understood and meant — even when amending the TCPA nearly three decades after its first enactment in 1991, before the invention of "text messages" — that Section 227(c) is limited only to "telephone calls." Although Plaintiff tries to rewrite the TCPA by alleging a legal conclusion in his complaint, telephone calls in Section 227(c) do not mean text messages.

The plain meaning of "telephone call" in 47 U.S.C. § 227(c)(5) is unambiguous, so the Court's inquiry should end with the plain language of the statute. By its plain reading, Section 227(c)(5) does not regulate text messages, but Plaintiff's two causes of action for violations of the TCPA, based on allegedly receiving text messages from Bonneville, fails as a matter of law.

---

[3] Section 227(h) and (i) both incorporate the definition of "text message" under Section 227(e).

### C.   The FCC's Declaratory Rulings Do Not Support Interpreting the Words "Telephone Call" in 47 U.S.C. § 227(c)(5) to Mean the Words "Text Message"

It is the role of courts "to independently interpret [statutes] and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 371 (2024). In doing so, courts may "seek aid from the interpretations of those responsible for implementing particular statutes." *Id.* An interpretive ruling "cannot bind a court," but it may be "informative to the extent it rests on factual premises within the agency's expertise." *Id*. at 402. While an agency's interpretation may have the "power to persuade," it lacks the "power to control." *Id.* "Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch." *Id.*

The FCC's earlier declaratory rulings do not support an interpretation of the words "telephone call" in 47 U.S.C. § 227(c)(5) to mean a text message. To start, the FCC has never expressly interpreted or addressed the meaning of the words "telephone call" as used in 47 U.S.C. § 227(c). The FCC has, when interpreting other subsections of the TCPA, stated a "call" may include "text message":

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number …. This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

In re Rules and Reguls., Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 at ¶ 165 (2003) ("2003 Order").

The FCC's 2003 pronouncement concerned only calls made with an automatic telephone dialing system, or an artificial or pre-recorded voice — a practice prohibited by Section 227(b), not by Section 227(c). *Id*. As much as the FCC mentioned or invoked the TCPA's statutory provisions in Paragraph 165 of its 2003 Order, it referenced only Section 227(b), but made no reference to Section 227(c).

*Id*., nn. 603, 605 & 607; see *Jones*, 792 F. Supp. 3d at 900 ("[o]n its face … the 2003 Order explicitly references only Section 227(b).") The FCC's pronouncement thus flowed from its rulemaking authority delegated by Congress under 47 U.S.C. § 227(b), *not* Section 227(c).

There is apparent logic to the FCC's differing views on the scope of Section 227(b) as distinct from 227(c). According to the FCC, "automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls." *Id*., ¶ 165, n. 607 (citing 47 U.S.C. § 227(b)); *see Davis*, 797 F. Supp. 3d at 1274 ("Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter."). Its pronouncement in the 2003 Order therefore does not apply here because it concerns a distinct subsection of the TCPA which is not the statutory provision under which Plaintiff asserts this lawsuit.

Similarly, 47 C.F.R. § 64.1200(e) states that the rules promulgated by the FCC under its rulemaking authority under 47 U.S.C. § 227(c) are "applicable to any person or entity making … telemarketing calls or text messages to wireless telephone numbers to the extent described in the [2003 Order]." Because the 2003 Order does not address the applicability of Section 227(c) to text messages, however, it has no bearing on whether the plain language of Section 227(c)(5) applies to text messages.

Moreover, had the FCC actually intended this language to express its interpretation that the words "telephone call" as used in Section 227(c)(5) also mean the words "text message," it would not have chosen an oblique and confusing way of saying so. The FCC knows how to express its interpretations directly and clearly when it wants to. See, e.g., 47 C.F.R. § 64.1200(a)(9) ("As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call.") But even were this what the FCC somehow intended to say under Section 64.1200(e), its interpretation would be of minimal persuasive value, if any, since the TCPA's plain statutory language in Section 227(c)(5) applies to telephone

16

calls, not to text messages. *Jones*, 792 F. Supp. 3d at 901 (the 2003 Order lacks persuasive value and does not override the plain language analysis because "the FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).")

The Supreme Court instructs us that this Court's role when interpreting the meaning of "telephone call" under 47 U.S.C. § 227(c)(5) is to reach the "best" reading of the statute which is "the reading the court would have reached if no agency were involved." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373 (2024). That is because "[i]n the business of statutory interpretation, if it is not the best, it is not permissible." *Id*. at 400. The best interpretation of the term "telephone call" here is the one that faithfully adheres to the TCPA's statutory text. *Jones*, 792 F. Supp. 3d at 901 ("The 'ordinary' principle of statutory interpretation — to start with the text of the statute to ascertain its plain meaning provides the answer.")

At bottom, reading the words "text message" into "telephone call" contrary to the plain language of 47 U.S.C. § 227(c) is not a statutory interpretation of the TCPA's plain language. It requires something altogether different: rewriting the statute to interpose new and additional words that do not appear there. *Jones*, 792 F. Supp. 3d at 901 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025. The Court confines itself to its assigned role which does not include legislating"); *Davis*, 797 F. Supp. 3d at 1274 ("[T]he court's role is not to look beyond clear language to ascertain Congress' purpose. Instead, the best evidence of that purpose is the language of the statute itself."); *Richards*, 2026 WL 847568, at *5 (same); cf. A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 344 (2012) ("Today, however, the 'spirit' of laws is the unhappy interpretive conception of a supposedly better policy than can be found in the words of an authoritative text. It is an unreliable nonstandard.") (dispelling "[t]he false notion that the spirit of a statute should prevail

17

over its letter").

**D.     The Supreme Court's Statutory Analysis in *Wisconsin Central Ltd. v. United States* Shows Why the TCPA's Narrower Term "Telephone Call" Must be Given its Plain Meaning Distinct from the Broader Term "Any Call"**

The Supreme Court's opinion in *Wisconsin Central Ltd v. United States*, 585 U.S. 274 (2018) provides the relevant analytical framework for resolving interpretive questions like the one presented here. In *Wisconsin Central*, the Court examined a statutory structure similar to this one: a broader term used in one provision of a statute, and a narrower, modified term used in a companion provision addressing the same general subject matter. The Court held that the narrower term must be given its plain, ordinary meaning, not expanded to match the scope of the broader term.

**1.     The Statutory Structure in Wisconsin Central Parallels the TCPA**

In *Wisconsin Central*, the Court interpreted the Railroad Retirement Tax Act ("RRTA"), which taxed employee "compensation" defined as "any form of money remuneration." 26 U.S.C. § 3231(e)(1). The companion statute enacted by the same Congress — the Federal Insurance Contributions Act ("FICA")—taxed "all remuneration," including benefits "paid in any medium other than cash." § 3121(a). *Wisconsin Central*, 585 U.S. at 279. The government argued stock options qualified as "money remuneration" under the RRTA because stock can be easily converted into money. *Id.* at 277. The Supreme Court rejected that argument: stock options are not "money" because the narrower term "money remuneration" cannot be read to encompass the same scope as "all remuneration." *Id.* at 277–84.

The same analytical framework applies here. Section 227(b)(1)(A) broadly prohibits making "any call" using certain technology — a phrase that, as the Ninth Circuit recognized in *Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) (*Satterfield*), may be broad enough to encompass text messages. In contrast,

BUCHALTER LLP
IRVINE

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

Section 227(c)(5) creates a private right of action only for persons who have received more than one "telephone call." Just as the RRTA used the narrower term "money remuneration" while FICA used the broader term "all remuneration," the TCPA uses the narrower term "telephone call" in Section 227(c)(5) while using the broader term "any call" in Section 227(b). Just as "money remuneration" cannot mean "all remuneration," "telephone call" cannot mean "any call."

### 2. The Presumption That Different Language Conveys Different Meaning Applies with Particular Force Here

In *Wisconsin Central*, the Court reaffirmed that courts "usually presume differences in language like this convey differences in meaning." *Id.* at 279 (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017)). The Court emphasized "that presumption must bear particular strength when the same Congress passed both statutes to handle much the same task." *Id.* (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)).

Here, that presumption carries even greater force than in *Wisconsin Central*. There, the two provisions at issue, the RRTA and FICA, were *companion* statutes. Here, Sections 227(b) and 227(c) are provisions *within the same statute*, enacted by the same Congress, at the same time, as part of the same legislative act. If different language in companion statutes must be given different meaning, then *a fortiori*, different language in different subsections of the *same statute* must be given different meaning. "The Congress that enacted both of these [provisions] knew well the difference between" "any call" and "telephone call." *See Wisconsin Central*, 585 U.S. at 279. "Its choice to use the narrower term" in Section 227(c)(5) alone "requires respect, not disregard." *Id.*

### 3. The Modifier "Telephone" Limits the Noun "Call" in the TCPA, Just as "Money" Limited "Remuneration" in the RRTA examined by the Supreme Court in *Wisconsin Central*

The Court's analysis of the statutory language in *Wisconsin Central*

19

illuminates the interpretive question here. In *Wisconsin Central*, the Court explained that in the phrase "money remuneration," the adjective "money" modifies the noun "remuneration," and therefore "money" limits the kinds of remuneration that qualify for taxation; "remuneration" does not expand what is money:

> When the statute speaks of taxing 'any form of money remuneration,' then, it indicates Congress wanted to tax monetary compensation in any of the many forms an employer might choose — coins, paper currency, checks, wire transfers, and the like. It does not prove Congress wanted to tax things, like stock, that aren't money at all.

*Id.* at 278.

The Supreme Court's reasoning applies with equal force here. In the phrase "telephone call," the adjective "telephone" modifies the noun "call." "Telephone" limits the types of calls that trigger a private right of action under Section 227(c)(5); "call" does not expand what counts as a telephone call. When Congress wrote "telephone call" in Section 227(c)(5), it specified that a private right of action covers calls made by telephone — that is, voice communications transmitted by a device that converts sound into electrical impulses. Telephone, Merriam-Webster's Collegiate Dictionary (11th Ed. 2019);[4] *see also* Telephone, American Heritage Dictionary, (5th Ed. 2012).[5] This does not show Congress intended to cover communications, like text messages, which are *not* "telephone calls," and have never been understood to be telephone calls in any ordinary understanding of those two words. The opposite is true.

In *Wisconsin Central*, the government argued that stock options should count as "money remuneration" because stock can easily be converted into money. The Supreme Court did not hesitate in rejecting this argument because "[w]hile stock can

---

[4]    Available at https://www.merriam-webster.com/dictionary/telephone (last visited May 22, 2026).

[5]    Available at https://ahdictionary.com/word/search.html?q=telephone (last visited May 22, 2026).

be bought or sold for money, few of us buy groceries or pay rent or value goods and services in terms of stock." *Id.* at 278. Plaintiff may try to argue that text messages should count as "telephone calls" because they are an attempt to communicate with someone by a telephone. But the fact a text message might be transmitted over a telephone network does not make it a "telephone call," any more than the fact stock can be converted into money makes it "money." The Supreme Court rejects interpretive arguments like Plaintiff's here, just as it rejected the government's argument about stock in *Wisconsin Central*.

### 4. The Court Should Not Rewrite the Statute By Speculation

Finally, the Supreme Court in *Wisconsin Central* cautioned that "[i]t is not [a court's] function to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have intended." *Id.* at 282 (quoting *Henson*, 582 U.S. at 89). The Court emphasized that "[w]ritten laws are meant to be understood and lived by. If a fog of uncertainty surrounded them, if their meaning could shift with the latest judicial whim, the point of reducing them to writing would be lost." *Id.* at 284. That is why it is a "fundamental canon of statutory construction" that words generally should be "interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the statute." *Id.* (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

"Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Id.* at 284. If Congress wishes to extend the private right of action in Section 227(c)(5) to encompass text messages, it knows how to do so. It demonstrates that ability by using broader language elsewhere in the very same statute. Until Congress exercises that authority, this Court should apply the statute as written.

BUCHALTER LLP
IRVINE

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

**E.      The Ninth Circuit's *Satterfield* Opinion Does Not Control the Statutory Interpretation of "Telephone Call" in Section 227(c)(5)**

In *Satterfield*, *supra*, 569 F.3d 946, the Ninth Circuit interpreted "any call" in Section 227(b), and specifically the words "to make any call" appearing in 47 U.S.C. § 227(b)(1)(A). But the court had no occasion to examine Section 227(c)(5), nor the words "telephone call" appearing in that provision of the statute: "The precise language at issue here is what Congress intended when it said 'to make any call' under the TCPA." *Satterfield*, 569 F.3d at 953; *id*. at 954 ("The language and purpose of the TCPA support the conclusion that the use of an ATDS to make any call, regardless of whether that call is communicated by voice or text, is prohibited.")

When interpreting those four words appearing in Section 227(b)(1)(A) — words that do not appear in Section 227(c)(5) — the court applied outmoded *Chevron* deference to the FCC's interpretation "that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)." *Id.* at 952. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (*Loper*) (*overruling Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). But after the Supreme Court's decision in *Loper*, courts must exercise "independent judgment" when determining the "best reading" of statutory language and do so without deference to an administrative agency's interpretation. *Id.*

In *Satterfield*, the court also found the dictionary definition of the verb "to call" meant "to communicate with or try to get into communication with a person by telephone." *Id.* at 953–54. Based on this definition, the court found that a "text message" could include a "call" because "text messaging is a form of communication used primarily between telephones." *Id.* at 954.

But that interpretation cannot be bootstrapped to "telephone call" as used in Section 227(c)(5). This is because when Congress drafted Section 227(c)(5), it deliberately omitted the word "any" to describe the type of "calls" that were encompassed by the private right of action, replacing that word with "telephone." It

22

did so because Congress was describing a specific type of call — not just "any call," but a "telephone call" — within the scope of Section 227(c)(5)'s private right of action.

"[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.*

Applying these same interpretive principles, *Satterfield*'s interpretation of the broad phrase "any call" in Section 227(b) cannot be correctly grafted onto the narrower phrase "telephone call" in Section 227(c)(5). The two provisions use different words, and those different words must be given different meanings. The dictionary definition of the word "telephone" illuminates why Congress could not have intended the words "telephone call" to mean a text message, no matter how technology evolved after passage of the TCPA.

A "telephone" is "a device by which sound (such as speech) is converted into electrical impulses and transmitted (as by wire or radio waves) to one or more specific receivers." Telephone, Merriam-Webster's Collegiate Dictionary (11th Ed. 2019);[6] see also Telephone, American Heritage Dictionary, (5th Ed. 2012) ("An instrument for simultaneously transmitting and receiving speech or other sounds over a distance by converting the sounds into signals that are sent to a similar instrument and converting them back into sounds.")[7]

Given the plain meaning of the word "telephone," the term "telephone call" cannot mean a "text message" because a text message does not involve the

---

[6]   Available at https://www.merriam-webster.com/dictionary/telephone (last visited May 22, 2026).

[7]   Available at https://ahdictionary.com/word/search.html?q=telephone (last visited May 22, 2026).

23

transmission of "sounds." So when Congress used the words "telephone call" in Section 227(c)(5) — as opposed to "any call" in Section 227(b) — it meant what everyone has always understood those words to mean: a voice call.

To interpret "telephone call" in the way Plaintiff's entire lawsuit hinges would render the word "telephone" superfluous. *Beisler v. Comm'r*, 814 F.2d 1304, 1307 (9th Cir. 1987) ("We should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress.") This Court presumes that Congress acted intentionally by omitting the word "any" and replacing it with "telephone" to describe the type of "call" that is within the scope of Section 227(c)(5)'s private right of action. *Cheneau*, 997 F. 3d at 920; *Wisconsin Central*, 585 U.S. at 278.

This is true because if the word "telephone call" in Section 227(c)(5) means the same thing as "any call" in Section 227(b), then the word "telephone" in the subsequent provision adds nothing, does nothing, and has no meaning. *Marx v. General Revenue Corp.*, 568 U.S. 371, 386 ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") As explained above, "telephone" modifies "call" in Section 227(c)(5), just as "money" modified "remuneration" in *Wisconsin Central*, specifying the type of call subject to Section 227(c)(5)'s private right of action: a voice call, not a text message.

That said, it is easy for Bonneville to acknowledge that four unpublished district court rulings have found *Satterfield* dispositive of the words "telephone call" in Section 227(c)(5).[8] But when given the correct law and the Supreme Court's analytical framework in *Wisconsin Central*, 585 U.S. at 278, it is much harder to

---

[8]   *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-CV-05093-JLS-BFM, 2025 WL 3549868 (C.D. Cal. Dec. 3, 2025); *Esquivel v. Mona Lee, Inc.*, No. 3:25-CV-00607- H-BLM, 2025 WL 3275607 (S.D. Cal. Nov. 24, 2025); *Taha v. Momentive Software, Inc.*, No. 8:25-CV-02330-DOC-JDE, 2026 WL 974297 (C.D. Cal. Mar. 11, 2026).

square that borrowed interpretation of "any call" in Section 227(b), particularly in the aftermath of *Loper*, 603 U.S. at 412, and to apply it to Section 227(c)(5). To do so extends *Satterfield*'s interpretation of one statutory provision involving materially different language to another.

## V.   **CONCLUSION**

For all these reasons, Plaintiff's causes of action based on receiving text messages from Bonneville fail to state a claim under 47 U.S.C. § 227(c). Because Plaintiff cannot cure this pleading deficiency by amendment, and no issues of material fact remain to be resolved, the Court should grant Bonneville's motion to dismiss without leave to amend.

Respectfully submitted,

DATED: May 26, 2026          BUCHALTER LLP


By:   /s/ Artin Betpera
          ARTIN BETPERA

          Attorneys for Defendant
          Bonneville International Corporation

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION**
**TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD