BUCHALTER LLP
ARTIN BETPERA (SBN: 244477)
ROBERT C. LITTLE (SBN: 182396)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant
Bonneville International Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AUSSIEKER,<br><br>Plaintiff,<br><br>vs.<br><br>BONNEVILLE INTERNATIONAL CORPORATION,<br><br>Defendant. | Case No. 3:26-cv-01899-JD<br>*Assigned to the Honorable James Donato*<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>DATE:  July 2, 2026<br>TIME:   10:00 a.m.<br>CTRM:  11, 19th Floor |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................6

II.   LEGAL ANALYSIS AND ARGUMENT ........................................................7

    A.   Plaintiff gives lengthy answers to questions the motion does not ask ...................................................................................................7

    B.   Congress wrote "telephone call" — no more, no less — in (c)(5)'s private right of action........................................................................9

    C.   A regulation cannot enlarge a private right of action Congress wrote narrowly.....................................................................................11

    D.   The 2018 amendments, and the silence read into them, cut against Plaintiff.......................................................................................13

    E.   Stripped of deference, Plaintiff is left with the statute's plain language which says "telephone call" not "text message".................14

III.  CONCLUSION ....................................................................................15

BUCHALTER LLP
IRVINE

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**    Case No. 3:26-cv-01899-JD

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001)...............................................................................................11

*Cent. Bank of Denv., N.A. v. First Interstate Bank of Denv., N.A.*,
511 U.S. 164 (1994)..........................................................................................13, 14

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*,
*467 U.S. 837 (1984)* ...........................................................................6, 8, 13, 14

*Cohens v. Virginia*,
19 U.S. (6 Wheat.) 264 (1821) ..........................................................................7, 8

*D'Agostino v. Circle K Stores Inc.*,
2026 U.S. Dist. LX 89449 (D. Ariz. 2026), Opp. 15:8 ............................6, 8, 11

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ................................................................9

*Duncan v. Walker*,
533 U.S. 167 (2001)................................................................................................9

*El Sayed v. Naturopathica Holistic Health, Inc.*,
No. 8:25-CV-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ...................9

*Girouard v. United States*,
328 U.S. 61 (1946)................................................................................................13

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026)....................................................................6, 7, 8

*James v. Smarter Contact, Inc.*,
No. 8:25-CV-1657, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) ......................9

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025), *appeal docketed*, No. __-____
(7th Cir. 2025) .......................................................................................................9

Buchalter LLP
Irvine

3

*USPS v. Konan*,
    146 S. Ct. 736 (2026), Opp. 24:2 ...............................................................15

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024).........................................................................6, 13, 14

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025)....................................................................................14, 15

*Perrin v. United States*,
    444 U.S. 37 (1979)................................................................................15

*Rabbitt v. Rohrman Midwest Motors, Inc.*,
    2026 WL 851279 (N.D. Ill. 2026)................................................................13

*Radvansky v. 1-800-Flowers.com, Inc.*,
    No. 1:25-CV-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026).......................9

*Richards v. Fashion Nova, LLC*,
    No. 1:25-CV-01145, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026) ....................9

*Russello v. United States*,
    464 U.S. 16 (1983)................................................................................9

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009)...................................................................6, 7, 8

*Stockdale v. Skymount Prop. Group, LLC*,
    No. 1:25 CV 1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026) .....................6

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
    552 U.S. 148 (2008)...............................................................................12

*Trim v. Reward Zone U.S.A. LLC*,
    76 F.4th 1157 (9th Cir. 2023)...................................................................11

*Webster v. Fall*,
    266 U.S. 507 (1925)...............................................................................7, 8

*Wisconsin Central Ltd. v. United States*,
    585 U.S. 274 (2018)...............................................................................10

4

## CALIFORNIA CASES

*People v. Ramirez*,
   104 Cal. App. 5th 315 (2024).......................................................................................6

## FEDERAL STATUTES

47 U.S.C.
   § 227(b)(1)(A) ................................................................................................6, 7, 8

## FEDERAL REGULATIONS

47 C.F.R. § 64.1200(e)...................................................................................11, 12

## RULES

Fed. R. Civ. P. 12(b)(6).................................................................................6, 7, 15

BUCHALTER LLP
IRVINE

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**          Case No. 3:26-cv-01899-JD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

It has been said that words are to lawyers as scalpels are to surgeons, since both are tools to be used with precision.[1] With no precision, Plaintiff takes a paintbrush to the TCPA, blending multiple and discrete subsections so that "call" and "telephone call" lose Congress's distinct meanings in a sprawling statute involving several distinct types of communications, including telephone calls, junk faxes, do-not-call lists, caller-ID spoofing, and text messages. Plaintiff Aussieker's opposition spends twenty-five pages disputing an argument Defendant Bonneville never makes.[2] Plaintiff wants Congress's private right of action in §227(c)(5) to include text messages like (b)(3)'s private right of action does for (b)(1). But (c)(5) does not.

Bonneville does not contend that a text message cannot be a "call" under the TCPA. It agrees that it can be. The Ninth Circuit said so in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). It said the same thing in *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026), after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ended *Chevron* deference. Opp. 1:9, 6:18-20; *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Acknowledging *Satterfield*'s and *Howard*'s interpretations of 47 U.S.C. § 227(b)(1), however, does not answer the question here. The Court will not find § 227(c)(5) in either case. Plaintiff's pleading here hinges on (c)(5), not (b)(1).

Bonneville's Rule 12(b)(6) motion thus presents a different question that Plaintiff's opposition never precisely reaches: whether "telephone call" — the phrase Congress used to create a TCPA private right of action in (c)(5), not (b)(3) — is a

---

[1]   *People v. Ramirez*, 104 Cal. App. 5th 315, 320 (2024).

[2]   This may be attributed to the recycled nature of Plaintiff's opposition. It criticizes unnamed defendants who are not here. He urges the Court to reject "KDS's inference" about congressional inaction, Opp. 14:12, says "Defendant cites" *Stockdale* "for this proposition," Opp. 14:21, and block-quotes *D'Agostino* faulting "Circle K" for relying on *Stockdale*, Opp. 14:23-25. But Bonneville is not KDS, and its motion does not rely on *Stockdale* anywhere. *Stockdale v. Skymount Prop. Group, LLC*, No. 1:25 CV 1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026).

Buchalter LLP
Irvine

text message. On that, Plaintiff presents lengthy block quotations on the word "call," but says nothing exacting about Congress's distinction of the words "telephone call" in (c)(5), which omit the "or message" Congress wrote in (a)(4).

Stripping the heavy block quotations, Plaintiff's opposition comes down to three arguments. He first reads *Howard* — a § 227(b)(1) case about the word "call" — as deciding the meaning of "telephone call" in the subsection *Howard* never cited. He next treats "telephone call" in § 227(c)(5) as a synonym for "telephone call or message" in a different section, § 227(a)(4). But this would mean Congress's disjunctive term "or message" is surplusage there. Then he invokes the presumption of consistent usage — a canon when properly applied defeats his pleading here.

The Court should grant Bonneville's Rule 12(b)(6) motion, and it should do so without leave to amend because the defect is one of law, not of pleading.

## II.     LEGAL ANALYSIS AND ARGUMENT

### A.     Plaintiff gives lengthy answers to questions the motion does not ask

What is undisputed comes first. *Satterfield* construed "call" in § 227(b)(1)(A) and held that a text message qualifies. 569 F.3d at 954. Bonneville's motion accepted that reading. Mot. 18–19, 22–23. Had Plaintiff sued under § 227(b), the point would be hard to dispute. But he did not. He sued under § 227(c)(5), whose operative term is not "call" but "telephone call." Mot. 8, 11.

Plaintiff's syllogism is that because *Satterfield* and *Howard* spoke of "the TCPA," the two cases govern every corner of the statute. Opp. 8:14-15, 16:9. Stare decisis does not work that way. A court construing "call" in the discrete subsection (b)(1) preceding (c)(5) does not silently decide what "telephone call" means in every other subsection of the statute. Plaintiff is overreaching. "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." *Cohens v. Va.*, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257, 290 (1821); *Webster v. Fall*, 266 U.S. 507, 511 (1925).

*Howard*, which Plaintiff treats as decisive, does not reach the question here.

*Howard* construed "call" — the operative term in § 227(b)(1)(A) — post-*Loper Bright* without *Chevron* deference. It ruled a text message is a "call," the same conclusion *Satterfield* reached pre-*Loper Bright*. Opp. 6:24; 18:5, 7:24. That answers the motion's point that *Satterfield* relied on such deference. Mot. 18:25–19:6.

But "call" is not "telephone call," and *Howard* was itself a § 227(b)(1) case. That is why even Plaintiff seems to recognize that its natural reading limits it "to claims asserted under" § 227(b)(1). Opp. 8:13-14. The motion's *Satterfield* argument equally applies to *Howard*: a ruling about "call" in § 227(b) does not decide the term "telephone call" in § 227(c)(5). Mot. 22. *Howard* adhered to *Satterfield*'s reading of "call," but it did not extend that reading to "telephone call" in a different subsection.

Plaintiff answers only that neither *Satterfield* nor *Howard* "elected to use language to limit the scope of their holdings," and that both speak of "the TCPA." Opp. 8:18 (quoting *Taha v. Momentive Software, Inc.*, 2026 U.S. Dist. LX 54376, \*7–8 (C.D. Cal. 2026)). But a ruling that "under the TCPA" a text message is a "call" remains a holding about the word "call." *Cohens*, 19 U.S. at 399; *Webster*, 266 U.S. at 511. Neither is a ruling on "telephone call" in (c)(5), a subsection that is not analyzed in either case. Plaintiff's unrestrained language describing a ruling as reaching "the TCPA" does not resolve a term the opinion never construed. *Id.*

Plaintiff's reliance on *D'Agostino v. Circle K Stores Inc.*, 2026 U.S. Dist. LX 89449 (D. Ariz. 2026), Opp. 15:8; 16:13, does not help him either. *D'Agostino* faulted a defendant who sought dismissal "even assuming text messages could potentially qualify as 'calls,'" and who never confronted *Howard*. Bonneville addressed *Satterfield*, Mot. 18:25–19:6, 21:1–24:3, with which *Howard* is consistent post-*Loper Bright*. Both held that a text is a "call" under § 227(b), but that ruling does not decide whether a "telephone call" in § 227(c)(5) is a text message. The distinction is in the statute's terms.

Nor does what Plaintiff calls an "emerging consensus" help him. Opp. 16:9. There is a consensus of district court rulings that read the statute opposite way from Plaintiff

Buchalter LLP
Irvine

and the district court cases he cites.[3] The district court decisions he assembles rest on the same step — they apply *Howard*'s reading of "call" to § 227(c)(5) without examining the preceding noun adjunct modifier "telephone" or the difference between (b)(3) and (c)(5) private rights of action. This Court is not bound by any of those decisions and may determine the best reading of the statute itself. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (district court decision is not binding).

## B. Congress wrote "telephone call" — no more, no less — in (c)(5)'s private right of action

Plaintiff's textual argument cuts against him. Section 227(a)(4) defines "telephone solicitation" as "the initiation of a telephone call or message … transmitted to any person," and Plaintiff stresses that Congress used "call or message" "disjunctively." Opp. 16:26–17:1, 17:20. True as far as it goes, but the words "or message" exist for a reason. Either "call" alone does not include a message, or the term "or message" is surplusage. *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Either reading defeats Plaintiff. If "call" already includes "message," then "or message" in § 227(a)(4) adds nothing. If it adds nothing, then "telephone call" in § 227(c)(5), which omits "or message," does not reach text messages. Plaintiff cannot inconsistently invoke consistent usage and then avoid it. "Where Congress includes particular language in one section … but omits it in another section of the same Act," it is presumed deliberate. *Russello v. United States*, 464 U.S. 16, 23 (1983). The (a)(4) definition, the (b) prohibitions and private remedy, and the (c)(5) private remedy were enacted together in 1991, so the difference in wording is Congress's own.

Worse for Plaintiff's sweeping conclusion, Congress itself declined to use the

---

[3]   *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) (text message is not a telephone call), *appeal docketed*, No. 25-2398 (7th Cir. 2025); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (same); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) (same); *James v. Smarter Contact, Inc.*, No. 8:25-CV-1657, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) (same); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) (same).

BUCHALTER LLP
IRVINE

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

broad term in (c)(5) it wrote in (a)(4). "Telephone solicitation" — which Plaintiff mislabels as "the core of § 227(c)," Opp. 16:23 — was defined to include "call or message." Congress could have given a private remedy to anyone who received more than one "telephone solicitation," or more than one "telephone call or message." But in (c)(5), it chose "telephone call" alone.

The two private rights of action in (b)(3) and (c)(5) confirm the choice Congress made. Mot. 23–25. Section 227(b)(3) reaches "a violation of …the regulations" with no "telephone call" element at all, and (c)(5) reaches only a person "who has received more than one telephone call" in violation of the regulations. Congress made "telephone call" a requirement of the (c)(5) remedy and imposed no such qualifier on (b)(3). Reading that requirement out of (c)(5), as Plaintiff is suggesting, deletes words Congress chose. That is not statutory construction.

Though Plaintiff largely ignores it, *Wisconsin Central* informs statutory construction here. The statute there taxed "any form of *money remuneration*" — the noun adjunct "money" *modifies* remuneration — so the question there was whether stock options counted as "money remuneration." *Compare* Mot. 18:21–21:27, *with* Opp. 22:16–23:3; *Wis. Central Ltd. v. United States*, 585 U.S. 274, 279 (2018). The Supreme Court held they did not. *Id.* "Money" modified "remuneration" and narrowed it, so the adjective did actual work and could not be omitted when the government wanted to tax stock options as "remuneration." In the same way, the noun adjunct "telephone" modifies and narrows the noun "call." Just as "money remuneration" is not all remuneration, so too "telephone call" is not every call.

Plaintiff's reading, which treats the two words as one, is the precise reading *Wisconsin Central* rejected. *Id.* at 279. Although Bonneville's motion presented the analytical framework, Mot. 18–23, Plaintiff's opposition refuses to acknowledge the distinction between the words "call" in (b)(1)(A) and the narrower "telephone call" in (c)(5). Since it cannot refute the reasoning, it tries to distinguish the Supreme Court's analytical framework on its facts. Opp. 22:18-21 ("The Court's reasoning

BUCHALTER LLP
IRVINE

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]                    Case No. 3:26-cv-01899-JD

depended upon the fact that stock is not money.") Plaintiff thus destabilizes the canons of construction by disregarding Congress's word choice and grammar.

A district court's reading of (c)(5) in *Taha*, *supra*, 2026 U.S. Dist. LX 54376, on which Plaintiff's opposition relies, Opp. 8:16; 10:18, illustrates the problem. *Taha* called "telephone" a "redundancy" and gave the attributive noun "telephone" modifying "call" no meaning at all. *Id.* at *7–8. But a reading that makes "telephone" redundant is precisely the reading the surplusage canon forbids. Mot. 24–25. Plaintiff's suggestion, drawn from *Trim v. Reward Zone U.S.A. LLC*, 76 F.4th 1157 (9th Cir. 2023), that Congress would have written "voice call," Opp. 9:3–7, goes to the wrong distinction. The distinction Congress drew is the one within § 227—"call or message" against "telephone call," and the private remedies in (b)(3) against (c)(5)—which Plaintiff's opposition does not meaningfully address.

### C.  A regulation cannot enlarge a private right of action Congress wrote narrowly

Plaintiff contends Bonneville's reading of (c)(5) would "sever § 227(c)(5) from the regulations it was enacted to enforce." Opp. 19:13-14. An enabling statute authorizes an agency to promulgate rulemaking subordinate to the statute. The statute is the source of the regulation's authority. Bonneville acknowledges (c)(5) provides a private action for violating the FCC's regulations. But the same provision independently limits *who* may bring it to a person who has received "more than one telephone call." That limit is in Congress's statute.

So the FCC may define what the do-not-call rules forbid and may extend those rules to text messages. But it cannot rewrite the statutory term "telephone call" that confines the private remedy. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress," and agencies "may play the sorcerer's apprentice but not the sorcerer himself." *Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001). Courts read such rights as written. "The decision to extend the cause of action is for Congress, not for us." *Stoneridge Inv. Partners, LLC v. Sci.-*

*Atlanta, Inc.*, 552 U.S. 148, 165 (2008).

Plaintiff treats two questions as one: what the regulations forbid, and who may sue. Section 227(c)(5) sets two requirements—the plaintiff must have received [1] "more than one telephone call" [2] "in violation of the regulations prescribed under this subsection." Opp. 19:19-20 (quoting (c)(5)). The second clause identifies which telephone calls are actionable. It does not define what a "telephone call" is.

A text message can violate the do-not-call rule and still not be a telephone call, in which case the private right of action Plaintiff is trying to prosecute here does not lie. The regulation Plaintiff relies on marks the limit. Section 64.1200(e) extends the do-not-call rules to text messages only "to the extent described in" the FCC's 2003 Order. *See* 47 C.F.R. § 64.1200(e); Opp. 19:24. That Order construed § 227(b), not the § 227(c)(5) private right of action. Mot. 15–17.

No FCC order has declared a text message privately actionable as a "telephone call" under § 227(c)(5). Plaintiff's "anomaly" rests on a rule that does not reach as far as he wants it to. Opp. 20:2. The 2003 Order extended "call" to text messages within § 227(b)'s prohibitions on automated dialing, not within § 227(c)(5)'s private right of action. Even the FCC has not treated a text as a privately actionable "telephone call" under (c)(5) — which is what Plaintiff asks this Court to do.

Read correctly, there is no such anomaly. There is the familiar point that an agency's rules can reach conduct a particular private remedy does not. A telemarketer who texts a registered number violates the FCC's rule, and that violation is enforceable by the FCC and by the state attorneys general under § 227(g), but not by a private plaintiff. If a text is sent using an automatic telephone dialing system or an artificial or prerecorded voice, it is privately actionable under § 227(b)(3).

What Plaintiff sees as a gap is Congress's allocation of enforcement among different actors. The courts do not supply words to expand the limits of the private right of action which Congress delimited. The words do govern, and for (c)(5), the words are "telephone call," not text message.

**D.     The 2018 amendments, and the silence read into them, cut against Plaintiff**

Unable to rely on the text Congress wrote, Plaintiff next relies on text Congress did not write: its choice not to amend § 227(c)(5) when it amended § 227(e) in 2018. Quoting another long block quote from *Rabbitt v. Rohrman Midwest Motors, Inc.*, 2026 WL 851279 (N.D. Ill. 2026), Plaintiff calls this statutory stare decisis. Opp. 13:1–14:7; 18:22. His reliance is misplaced. Congressional inaction is the weakest interpretive tool because "several equally tenable inferences may be drawn from such inaction." *Cent. Bank of Denv., N.A. v. First Interstate Bank of Denv., N.A.*, 511 U.S. 164, 187 (1994). Silence is not enactment, least of all where the inference would expand a private right of action. *Girouard v. United States*, 328 U.S. 61, 69 (1946) ("It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law.").

Nor was there anything settled to ratify as to § 227(c)(5). The FCC's 2003 Order construed § 227(b), and the district decisions Plaintiff collects, Opp. 5:9-17, were decided in 2025 and 2026, after the amendment. Plaintiff himself dates the pertinent history to "prior to 2018," Opp. 12:22, yet the only authority then existing construed subsection (b). Congress did not endorse a (c)(5) "consensus" in 2018 that cuts both ways years later.

Plaintiff's own framing makes the point. He argues that in 2018 the FCC's reading was "the law of the land" under *Chevron*, Opp. 14, so congressional silence was acceptance. Opp. 11:25–12:22. But that inference rests on *Chevron*, which is no longer the law. After *Loper Bright*, a 2018 "acceptance" of an agency reading never tested against the statutory text, as Plaintiff proposes here (Opp. 12:18-19, 14:14-15), carries no weight against the statutory text itself and this Court's best reading of it.

When Congress did legislate, it distinguished text messages from calls expressly: it defined "text message" in § 227(e) and not in § 227(c). See 47 U.S.C. § 227(e)(8);

BUCHALTER LLP
IRVINE

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**                    Case No. 3:26-cv-01899-JD

Mot. 13:12–14:25.[4]

Plaintiff says § 227(e)(8) defines its terms "[f]or purposes of this subsection," so the definition cannot narrow § 227(c). Opp. 11:17-18. That is true as far as it goes, but it does not go very far because Bonneville does not import the (e)(8) definition into (c). The point is narrower. Legislating in 2018 and again in 2019, when texting was ubiquitous, Congress used "text message" in § 227(e) and in the TRACED Act's reporting rules, but left § 227(c)(5)'s "telephone call" alone. That (e)(8) confines its own definitions only shows that Congress drafts subsection by subsection, an assumption on which Bonneville's reading rests but Plaintiff's disregards.

Finally, Plaintiff's use of *Loper Bright*'s stare-decisis passage, Opp. 13:13–14:7, fails for the same reason. *Loper Bright* preserved the "holdings" of specific decisions that had sustained agency action under *Chevron*. 603 U.S. at 412. There is no holding — from this Circuit, from the United States Supreme Court, or from the FCC — that "telephone call" in § 227(c)(5) includes a text message. There is no holding to preserve here, and the statutory text answers the question.

### E. Stripped of deference, Plaintiff is left with the statute's plain language which says "telephone call" not "text message"

Plaintiff asks the Court to resolve "any doubt … in favor of deference to the agency's longstanding reasonable judgment." Opp. 6:9-10. That asks for something the law no longer supplies, for two independent reasons. *First*, deference to a reasonable agency reading is *Chevron*, and *Chevron* is gone. *Loper Bright*, 603 U.S. at 412. *Second*, the Supreme Court has since held, in a TCPA case, that a district court is not bound by the FCC's reading of this statute, but must determine its meaning under ordinary principles of statutory interpretation, giving the agency's view only "appropriate respect." *McLaughlin Chiropractic Assocs., Inc. v. McKesson*

---

[4]   To be precise, § 227(e)(8)'s definition of "text message" was added by the RAY BAUM'S Act of 2018, Pub. L. No. 115-141, § 503(a)(2)(C) (not the 2019 TRACED Act cited at Mot. 13), though under either, Congress placed the term in § 227(e), not § 227(c).

BUCHALTER LLP
IRVINE

*Corp.*, 606 U.S. 146 (2025).

"Appropriate respect" is not deference, and respect does not turn "telephone call" into "text message." *McLaughlin* is no stray administrative-law case. It arose from the FCC's reading of the TCPA itself, so Plaintiff asking this Court to defer to the agency's "longstanding" view lacks a basis.

The best reading, found independently, is the one Bonneville's motion has given. Mot. 11–13. Words bear "their ordinary, contemporary, common meaning" at the time of enactment. *Perrin v. United States*, 444 U.S. 37, 42 (1979). The TCPA was enacted in 1991, and the first text message was sent in December 1992. A word cannot ordinarily denote a thing that does not yet exist, so "telephone call" in 1991 did not ordinarily mean an SMS message. There were none.

Plaintiff's dictionaries widen the gap rather than close it. To reach texts, Plaintiff must read "telephone call" as nothing more than "a call," erasing "telephone" — the surplusage problem again. His reliance on *USPS v. Konan*, 146 S. Ct. 736 (2026), Opp. 24:2, for the idea that the oldest dictionary sense is not necessarily the primary one, cuts the other way. Bonneville relies on the ordinary 1991 sense, a voice call, while Plaintiff needs a sense broad enough to try to absorb a technology invented afterward.

Plaintiff's closing complaint, that it is "arbitrary" for a phone to be a "telephone" on a voice call but to "cease functioning as a telephone" when texting moments later, Opp. 22:5–7, mistakes the statute. The statute classifies communications. A voice call and a text differ when sent from one handset, just as a telephone call and a mailed letter differ when made and sent from the same desk. There is nothing arbitrary in a statute that reaches one kind of communication and not another. What would be arbitrary is erasing the word Congress chose because a single device can now do two things.

## III.   CONCLUSION

For these reasons, Bonneville's Rule 12(b)(6) motion should be granted.

Dated: June 22, 2026

Respectfully submitted,

BUCHALTER LLP

By: /s/ Artin Betpera
ARTIN BETPERA

*Attorneys for Defendant*
BONNEVILLE INTERNATIONAL
CORPORATION

BUCHALTER LLP
IRVINE

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD