BUCHALTER LLP
ARTIN BETPERA (SBN: 244477)
ROBERT C. LITTLE (SBN: 182396)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant
Bonneville International Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AUSSIEKER,<br><br>    Plaintiff,<br><br>    vs.<br><br>BONNEVILLE INTERNATIONAL CORPORATION,<br><br>    Defendant. | Case No. 3:26-cv-01899-JD<br>*Assigned to the Honorable James Donato*<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>DATE: October 8, 2026<br>TIME: 10:00 a.m.<br>CTRM: 11, 19th Floor |

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on October 8, 2026, at 10:00 a.m., or as soon thereafter as the Court's schedule permits, before the Honorable James Donato, in Courtroom 11, 19th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Bonneville International Corporation ("Defendant" or "Bonneville") will and hereby does move under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's complaint. This motion is brought on the grounds that Plaintiff's two causes of action, both of which are brought pursuant to the private right of action for "telephone calls" under 47 U.S.C. § 227(c)(5), fail as a matter of law because they are based on text messages, and not telephone calls allegedly sent by Defendant to Plaintiff.

This motion is based on this notice, the memorandum of points and authorities, the filings in this action to date, and any other matter that may be properly considered by the Court at the hearing of this motion.

Respectfully submitted,

Dated: July 10, 2026

BUCHALTER LLP


By:  /s/ Artin Betpera
　　　ARTIN BETPERA

Attorneys for Defendant
Bonneville International Corporation

BUCHALTER LLP
IRVINE

2

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................9

II. SUMMARY OF PLAINTIFF'S COMPLAINT ...........................................10

III. LEGAL STANDARD..................................................................................10

IV. DISCUSSION...............................................................................................11

    A. The TCPA Creates Two Distinct Private Rights of Action. Plaintiff Invokes Only Section 227(c)(5)'s Remedy for "Telephone Calls" ....11

    B. The Plain Language of 47 U.S.C. § 227(c)(5) Authorizes Suit for "Telephone Calls" That Violate the TCPA, Not for "Text Messages"..........................................................................................12

    C. Satterfield and Howard Construed the Word "Call" in Section 227(b)(1)(A), Not "Telephone Call" in Section 227(c)(5) .................15

    D. Wisconsin Central Confirms That the Narrower Term "Telephone Call" Cannot Be Expanded to Match the Broader Term "Any Call" .17

    E. The FCC's Rulings Do Not — and Cannot — Enlarge the Private Right of Action Congress Wrote in Section 227(c)(5).......................20

V. CONCLUSION ..........................................................................................23

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION**
**TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................10

*Beisler v. Comm'r*,
814 F.2d 1304 (9th Cir. 1987)................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................10

*Camreta v. Greene*,
563 U.S. 692 (2011)................................................................17

*Cent. Bank of Denv., N.A. v. First Interstate Bank of Denv., N.A.*,
511 U.S. 164 (1994)................................................................14

*Cheneau v. Garland*,
997 F.3d 916 (9th Cir. 2021)..................................................13

*Cohens v. Virginia*,
19 U.S. (6 Wheat.) 264 (1821) (Marshall, C.J.)....................15

*CVS Health Corp. v. Vividus, LLC*,
878 F.3d 703 (9th Cir. 2017)..................................................12

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ................... 12, 17, 21, 22

*Dilanyan v. Hugo Boss Fashions, Inc.*,
No. 2:25-CV-05093-JLS-BFM, 2025 WL 3549868 (C.D. Cal. Dec.
3, 2025)....................................................................................16

*Duncan v. Walker*,
533 U.S. 167 (2001)................................................................13

*El Sayed v. Naturopathica Holistic Health, Inc.*,
    No. 8:25-CV-00846, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .................17

*Esquivel v. Mona Lee, Inc.*,
    No. 3:25-CV-00607-H-BLM, 2025 WL 3275607 (S.D. Cal. Nov.
    24, 2025).........................................................................................................16

*Girouard v. United States*,
    328 U.S. 61 (1946).........................................................................................14

*Howard v. Republican Nat'l Comm.*,
    164 F.4th 1119 (9th Cir. 2026).............................................................9, 15, 16

*James v. Smarter Contact, Inc.*,
    No. 8:25-CV-1657, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) ....................17

*Jones v. Blackstone Med. Servs., LLC*,
    792 F. Supp. 3d 894 (C.D. Ill. 2025)................................. 12, 13, 17, 20, 21, 22

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)..........................................................................10

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024).......................................................................9, 15, 17, 20

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013).......................................................................................16

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025).......................................................................................20

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012).......................................................................................11

*Radvansky v. 1-800-Flowers.com, Inc.*,
    No. 1:25-CV-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026).....................17

*Richards v. Fashion Nova, LLC*,
    No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568
    (S.D. Ind. Mar. 26, 2026).............................................................. 12, 14, 17, 22

*Russello v. United States*,
    464 U.S. 16 (1983).........................................................................................13

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009)......................................................................9, 15, 16

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
  552 U.S. 148 (2008)...............................................................................................21

*Taha v. Momentive Software, Inc.*,
  No. 8:25-CV-02330-DOC-JDE, 2026 WL 974297 (C.D. Cal. Mar.
  11, 2026).................................................................................................................17

*United States v. TRW Rifle*,
  447 F.3d 686 (9th Cir. 2006)................................................................................12

*Webster v. Fall*,
  266 U.S. 507 (1925)...............................................................................................15

*Wilson v. Cirkul Inc.*,
  No. 6:25-CV-02036-AP, 2026 WL 1508003 (D. Or. Apr. 14, 2026)................17

*Wilson v. MEDVIDI Inc.*,
  No. 5:25-cv-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7,
  2025) .......................................................................................................................16

*Wisconsin Central Ltd. v. United States*,
  585 U.S. 274 (2018)............................................................................17, 18, 19, 20

**Federal Statutes**

26 U.S.C. § 3121(a) .................................................................................................18

26 U.S.C. § 3231(e)(1)........................................................................................17, 18

47 U.S.C. § 227(i)....................................................................................................19

47 U.S.C. § 227(a)(4).....................................................................................9, 13, 19

47 U.S.C. § 227(b) ............................................................... 11, 14, 15, 16, 18, 20

47 U.S.C. § 227(b)(1) .............................................................................................21

47 U.S.C. § 227(b)(1)(A) .......................................................................9, 11, 15, 19

47 U.S.C. § 227(b)(2) .............................................................................................11

47 U.S.C. § 227(b)(3) ............................................................... 11, 15, 17, 19, 22

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION**                    Case No. 3:26-cv-01899-JD
**TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

47 U.S.C. § 227(c) ...................................................................................14, 20

47 U.S.C. § 227(c)(1)......................................................................................11

47 U.S.C. § 227(c)(5)..................9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22

47 U.S.C. § 227(e) .......................................................11, 13, 14, 15, 16, 19, 20

47 U.S.C. § 227(e)(8) ......................................................................................14

47 U.S.C. § 227(e)(8)(C) ................................................................................13

47 U.S.C. § 227(g) ..........................................................................................22

47 U.S.C. § 227(h) ..........................................................................................19

47 U.S.C. § 227(h), (i) ....................................................................................14

Federal Rule of Civil Procedure 12(b)(6) .....................................................10

**Federal Regulations**

47 C.F.R. § 64.1200(a)(9) ...............................................................................21

47 C.F.R. § 64.1200(a) and (b) ......................................................................11

47 C.F.R. § 64.1200(c) ...................................................................................10

47 C.F.R. § 64.1200(c)(2) ...............................................................................11

47 C.F.R. § 64.1200(d) ...................................................................................10

47 C.F.R. § 64.1200(e) ...................................................................................21

**Other Authorities**

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation
    of Legal Texts 344 (2012)...........................................................................22

*In re Rules & Reguls., Implementing the Tel. Consumer Prot. Act of
    1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) .......................................20, 21

RAY BAUM'S Act of 2018, Pub. L. No. 115-141, § 503(a)(2)(C) .................13, 14

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**                    Case No. 3:26-cv-01899-JD

The First Text Message Celebrates 25 Years, available at
    https://www.npr.org/2017/12/04/568393428/the-first-text-
    messages-celebrates-25-years ...................................................................12

The Pallone-Thune Telephone Robocall Abuse Criminal Enforcement
    and Deterrence (TRACED) Act, Pub. L. No. 116-105, Dec. 30,
    2019, 133 Stat. 3274 ......................................................................14

Telephone, American Heritage Dictionary (5th ed. 2012), available at
    https://ahdictionary.com/word/search.html?q=telephone (last
    visited July 10, 2026) ....................................................................16

Telephone, Merriam-Webster's Collegiate Dictionary (11th ed. 2019),
    available at https://www.merriam-
    webster.com/dictionary/telephone (last visited July 10, 2026) ........................16

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**                Case No. 3:26-cv-01899-JD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

When Congress created a private right of action under the Telephone Consumer Protection Act (TCPA) in 1991 for any person "who has received more than one *telephone call* within any 12-month period" in violation of the FCC's do-not-call regulations, 47 U.S.C. § 227(c)(5) (emphasis added), did it also intend the words "telephone call" to mean "text message"? The answer to this dispositive question of law is *no*. Plaintiff's two causes of action — both brought under Section 227(c)(5) and based exclusively on text messages allegedly sent by Defendant Bonneville International Corporation — fail as a matter of law.

To be clear at the outset about what this motion does not argue: Bonneville does not contend that a text message can never be a "call" under the TCPA. The Ninth Circuit held that it can in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009), and again in *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ended *Chevron* deference. But both decisions construed the word "call" in Section 227(b)(1)(A)'s prohibition on calls made with autodialers or artificial or prerecorded voices. Neither decision construed — or even cited — Section 227(c)(5) or its differently worded private right of action for "telephone calls." Yet this is the only TCPA provision Plaintiff invokes for his claims.

That difference in language is not semantics; it is fundamental statutory construction. In the same 1991 statute, Congress used the broad words "any call" in Section 227(b)(1)(A), defined "telephone solicitation" in Section 227(a)(4) to reach a "telephone call *or message*," and then wrote the private right of action in Section 227(c)(5) to require receipt of a "telephone call" — no more, no less. Because Plaintiff does not allege that Bonneville ever placed a telephone call to him, he has no claim under Section 227(c)(5), and the Court should dismiss the complaint without leave to amend.

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**
Case No. 3:26-cv-01899-JD

## II.   SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that, between November 2023 and October 2025, he received at least six telemarketing text messages from Bonneville promoting its KNCI radio station, including sweepstakes promotions and contests. Compl. ¶¶ 19–26. Plaintiff alleges he did not give Bonneville consent to send him these text messages, and that his telephone number was registered with the National Do Not Call Registry on September 21, 2006. Compl. ¶¶ 13, 18. He also says he replied with "STOP" after the third text message, then received an automated confirmation that he had been successfully unsubscribed, but subsequently received text messages in October 2025. Compl. ¶¶ 21–23.

Based on these allegations, Plaintiff asserts two causes of action, both under the private right of action in 47 U.S.C. § 227(c)(5): the first for alleged violations of the TCPA's national do-not-call regulations, 47 C.F.R. § 64.1200(c), and the second for alleged violations of its internal do-not-call regulations, 47 C.F.R. § 64.1200(d). Compl. ¶¶ 49–58. Plaintiff also seeks to certify two putative nationwide classes of persons who received "more than one telemarketing call or text message" from or on behalf of Bonneville. Compl. ¶ 39. Every communication alleged in the complaint is a text message. The complaint does not allege that Bonneville placed a single telephone call to Plaintiff or to anyone else.

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. The Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.   DISCUSSION

### A.   The TCPA Creates Two Distinct Private Rights of Action. Plaintiff Invokes Only Section 227(c)(5)'s Remedy for "Telephone Calls"

Passed in 1991, the TCPA "bans certain practices invasive of privacy and directs the Federal Communications Commission … to prescribe implementing regulations." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370 (2012). It is a lengthy statute, but only two of its subsections matter here. Section 227(b) prohibits, with some exceptions not relevant here, making "any call . . . using any automatic telephone dialing system or artificial or prerecorded voice …" to enumerated types of telephone lines, including cellular telephones. 47 U.S.C. § 227(b)(1)(A).

Congress directed the FCC to prescribe regulations implementing Section 227(b) (§ 227(b)(2)), which the FCC has done at 47 C.F.R. § 64.1200(a) and (b). Separately, Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Under that authority, the FCC promulgated regulations which prohibit, with some exceptions, making "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

Congress paired these two schemes with two differently worded private rights of action. Section 227(b)(3) permits any person to bring "an action based on a violation of [Section 227(b)] or the regulations prescribed [by the FCC] under [Section 227(b)]" — with no "telephone call" element at all. Section 227(c)(5), by contrast, permits suit only by a "person who has received more than one telephone call within any 12-month period by … the same entity in violation of the regulations prescribed under this subsection." Congress thus made the receipt of "telephone call[s]" an express element of the only remedy Plaintiff invokes. As shown below, a text message is not a "telephone call," and reading that element out of the statute is

not statutory construction — it is impermissible deletion.

**B.    The Plain Language of 47 U.S.C. § 227(c)(5) Authorizes Suit for "Telephone Calls" That Violate the TCPA, Not for "Text Messages"**

As with all questions of statutory interpretation, "'[o]ur analysis begins with the language of the statute. ….'" *United States v. TRW Rifle*, 447 F.3d 686, 689 (9th Cir. 2006). Courts "must give words their 'ordinary or natural' meaning" and, for undefined terms, "'follow the common practice of consulting dictionary definitions to clarify their ordinary meaning[ ]' and look to how the terms were defined 'at the time [the statute] was adopted." *Id.* (citation modified). "If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) (citation omitted).

Congress passed the TCPA in 1991, when cell phones were the size of bricks and text messages had not been invented. The first text message was not transmitted until December 3, 1992.[1] Because statutory words carry the meaning they had at the time of enactment, it is impossible for Congress to have meant in 1991 that a "telephone call" was a "text message." The technology did not exist.

"Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025); *see also Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("[n]o ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *2–3 (S.D. Ind. Mar. 26, 2026). The same is true in common

---

[1]    See The First Text Message Celebrates 25 Years, available at https://www.npr.org/2017/12/04/568393428/the-first-text-messages-celebrates-25-years [https://perma.cc/K6R4-RH3E]. ("The first text message was transmitted Dec. 3, 1992. Engineer Neil Papworth typed 'merry Christmas' on a computer and sent the first SMS message to the cellphone of Vodafone director Richard Jarvis.").

parlance today. No one would understand the statement "Sally sent me a text message inviting me over" to mean "Sally sent me a telephone call inviting me over." *See Jones*, 792 F. Supp. 3d at 899–900.

The TCPA's own text confirms that Congress meant what it wrote. Section 227(a)(4) defines "telephone solicitation" as "the initiation of a telephone call *or message* … transmitted to any person" for commercial purposes. 47 U.S.C. § 227(a)(4) (emphasis added). In the statute at issue, then, Congress knew how to reach communications beyond telephone calls. It added the disjunctive words "or message" there. *Id.*

Yet when Congress wrote the private right of action in Section 227(c)(5), it conferred the remedy only on a person who received "more than one telephone call" — not more than one "telephone solicitation," and not more than one "telephone call or message." "[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021); *accord Russello v. United States*, 464 U.S. 16, 23 (1983). If the unmodified word "call" already included text "messages," Congress's disjunctive phrase "or message" in Section 227(a)(4) would serve no purpose — a reading the canon against surplusage forbids. *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Either way, Plaintiff's claims fail. If the word "call" standing alone already included text messages, then "or message" in Section 227(a)(4) is surplusage. If "or message" does independent work, then "telephone call" in Section 227(c)(5) — which omits those words — does not reach text messages.

Congress's subsequent 2018 and 2019 amendments to the TCPA underscore that it treats a text "message" and a "telephone call" as distinct terms describing distinct telecommunications technology. In 2018's RAY BAUM'S Act, Congress added to Section 227(e) a definition of "text message" that expressly *excludes* "a real-time, two-way voice … communication." 47 U.S.C. § 227(e)(8)(C) (defining text

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**                    Case No. 3:26-cv-01899-JD

message as "a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number or N11 service code").[2] What type of technology fits the description of a real-time, two-way voice communication? A telephone call, not a text message. In 2019's TRACED Act, Congress created reporting and information-sharing requirements that refer to calls and "text message[s]" in connection with Sections 227(b) and (e), but refer only to "a call" in connection with Section 227(c). 47 U.S.C. § 227(h), (i).[3]

Twice, then — both in 2018 and in 2019 when texting was ubiquitous — Congress legislated about text messages by name. Both times it left Section 227(c)(5)'s "telephone call" untouched. We can expect that Congress used the words "text message" where it meant them. "The reference to text messages in § 227(e) shows that if Congress had wanted § 227(c) to apply to text messages, it knew how to say so." *Richards*, 2026 WL 847568, at *4. Nor can congressional silence toward Section 227(c)(5) be recast as adoption of a broader reading. *See Cent. Bank of Denv., N.A. v. First Interstate Bank of Denv., N.A.*, 511 U.S. 164, 187 (1994); *Girouard v. United States*, 328 U.S. 61, 69 (1946) ("It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law.").

The plain meaning of "telephone call" in 47 U.S.C. § 227(c)(5) is unambiguous, so the Court's inquiry should end with the statutory text. By its plain terms, Section 227(c)(5) provides no private right of action for text messages, and Plaintiff's two causes of action, which allege nothing else, fail as a matter of law.

---

[2]   Section 227(e)(8)'s definition of "text message" was added by RAY BAUM'S Act of 2018, Pub. L. No. 115-141, § 503(a)(2)(C).

[3]   The Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence (TRACED) Act, Pub. L. No. 116-105, Dec. 30, 2019, 133 Stat. 3274. Sections 227(h) and (i) both incorporate the definition of "text message" under Section 227(e).

**C.** *Satterfield* **and** *Howard* **Construed the Word "Call" in Section 227(b)(1)(A), Not "Telephone Call" in Section 227(c)(5)**

In *Satterfield*, the Ninth Circuit interpreted the words "to make any call" in Section 227(b)(1)(A): "The precise language at issue here is what did Congress intend when it said 'to make any call' under the TCPA." 569 F.3d at 953. Applying then-controlling *Chevron* deference to the FCC's interpretation, and reasoning that "text messaging is a form of communication used primarily between telephones," the court held that a text message is a "call" under that provision. *Id.* at 952–54.

Earlier this year in *Howard*, the Ninth Circuit held the same thing in *Satterfield*, another Section 227(b) case. 164 F.4th at 1123–24. "[E]ven in the absence of *Chevron* deference," which *Loper Bright* has since abolished, 603 U.S. at 412, "a 'text message' constitutes a 'call' within the meaning of the TCPA." *Id.* Bonneville accepts both holdings. Had Plaintiff sued under Section 227(b), the point would be hard to dispute. But he did not. He sued under Section 227(c)(5). The operative term there is "telephone call," not "call" under Section 227(b)(3).

Neither *Satterfield* nor *Howard* construed — or even cited — Section 227(c)(5) or the phrase "telephone call." A holding that a text message is a "call" under Section 227(b)(1)(A) is a holding about the word "call." It does not silently decide the meaning of the narrower phrase "telephone call" in a neighboring subsection that neither opinion analyzed. "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.")

That *Satterfield* and *Howard* described their holdings as interpreting "the TCPA" does not resolve the meaning of a term those opinions never construed, in a subsection they never examined.

The textual differences between the two provisions are dispositive. When Congress drafted Section 227(c)(5), it did not borrow Section 227(b)'s broader phrase "any call," but deliberately described a specific type of call — a "telephone call." A "telephone" is "a device by which sound (such as speech) is converted into electrical impulses and transmitted (as by wire or radio waves) to one or more specific receivers." Telephone, Merriam-Webster's Collegiate Dictionary (11th Ed. 2019);[4] *see also* Telephone, American Heritage Dictionary (5th Ed. 2012) ("An instrument for simultaneously transmitting and receiving speech or other sounds over a distance …").[5] A text message does not involve the transmission of sound. So when Congress uses the words "telephone call" in Section 227(c)(5) — as opposed to "any call" in Section 227(b) — it meant what everyone has always understood those words to mean: a voice call.

Treating "telephone call" in Section 227(c)(5) as synonymous with "any call" in Section 227(b) would also render the word "telephone" superfluous. It would add nothing, do nothing, and mean nothing. Courts "should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." *Beisler v. Comm'r*, 814 F.2d 1304, 1307 (9th Cir. 1987); *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon [against surplusage] is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

On the one hand, some unpublished district court decisions have extended *Satterfield* and *Howard* to Section 227(c)(5).[6] Each generally takes the same shortcut,

---

[4]  Available at https://www.merriam-webster.com/dictionary/telephone (last visited July 10, 2026).

[5]  Available at https://ahdictionary.com/word/search.html?q=telephone (last visited July 10, 2026).

[6]  *See*, *e.g.*, *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-CV-05093-JLS-BFM, 2025 WL 3549868 (C.D. Cal. Dec. 3, 2025); *Esquivel v.*

applying the Ninth Circuit's reading of the word "call" without examining subsection (c)(5)'s antecedent modifier "telephone" with "call," nor the difference between the private rights of action in Sections 227(b)(3) and 227(c)(5). One goes further, dismissing the statutory word "telephone" as a "redundancy" — a reading the surplusage canon prohibits. *Taha*, *supra*, 2026 WL 974297, at \*3.

On the other hand, several district courts have applied the statute's plain language and consistently ruled that a text message is not a "telephone call" under Section 227(c)(5).[7]

None of these district court decisions binds this Court, which must determine the best reading of the statute for itself. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Loper Bright*, 603 U.S. at 400 ("In the business of statutory interpretation, if it is not the best, it is not permissible.").

**D.    *Wisconsin Central* Confirms That the Narrower Term "Telephone Call" Cannot Be Expanded to Match the Broader Term "Any Call"**

The Supreme Court's decision in *Wis. Central Ltd. v. United States*, 585 U.S. 274 (2018) (*Wisconsin Central*) supplies the analytical framework for resolving interpretive questions like the one presented here. There, the Railroad Retirement Tax Act taxed employee compensation defined as "any form of money

---

*Mona Lee, Inc.*, No. 3:25-CV-00607-H-BLM, 2025 WL 3275607 (S.D. Cal. Nov. 24, 2025); *Taha v. Momentive Software, Inc.*, No. 8:25-CV-02330-DOC-JDE, 2026 WL 974297 (C.D. Cal. Mar. 11, 2026) (describing the word "telephone" in Section 227(c)(5) as "redundant"); *Wilson v. Cirkul Inc.*, No. 6:25-CV-02036-AP, 2026 WL 1508003 (D. Or. Apr. 14, 2026)

[7]   *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025), *appeal docketed sub nom. Steidinger v. Blackstone Med. Servs., LLC*, No. 25-2398 (7th Cir. 2025) (argued May 21, 2026); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026); *James v. Smarter Contact, Inc.*, No. 8:25-CV-1657, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00846, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025).

remuneration," 26 U.S.C. § 3231(e)(1), while the companion FICA statute — enacted by the same Congress — taxed "all remuneration," including benefits "paid in any medium other than cash[.]" 26 U.S.C. § 3121(a).

The government argued that stock options qualified as "money remuneration" because stock can easily be converted into money. The Court rejected that argument: the modifier "money" limits the noun "remuneration," so the phrase reaches "monetary compensation in any of the many forms an employer might choose— coins, paper currency, checks, wire transfers, and the like," but not "things, like stock, that aren't money at all." 585 U.S. at 277, 278. Courts "usually 'presume differences in language like this convey differences in meaning,'" and "that presumption must bear particular strength when the same Congress passed both statutes to handle much the same task." *Id.* at 279 (citing *Henson v. Santander Consumer U.S.A. Inc.*, 582 U.S. 79, 86 (2017), and *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)).

The presumption underlying *Wisconsin Central*'s analysis of two companion statutes applies with greater force here because Sections 227(b) and 227(c)(5) are provisions of the *same statute*, enacted by the same Congress, at the same time, as part of the same legislative act. Just as "money" modified and narrowed "remuneration" in 26 U.S.C. § 3231(e)(1), the modifier "telephone" limits the types of "calls" that trigger the private right of action in 47 U.S.C. § 227(c)(5).

And just as stock's convertibility into money did not make stock "money," the fact that a text message is transmitted over a cellular or satellite network does not make it a "telephone call." "[W]hile stock can be bought or sold for money, few of us buy groceries or pay rent or value goods and services in terms of stock." *Id.* at 278. "The Congress that enacted both of these [provisions] knew well the difference between" "any call" and "telephone call," and its "choice to use the narrower term" in Section 227(c)(5) "requires respect, not disregard." *See id.* at 279.

*Wisconsin Central* also forecloses rewriting the statute through speculation about how Congress might have addressed technologies invented after 1991. "It is

BUCHALTER LLP
IRVINE

not [a court's] function to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have intended." *Id.* at 282 (quoting *Henson*, 582 U.S. at 89). "Written laws are meant to be understood and lived by. If a fog of uncertainty surrounded them, if their meaning could shift with the latest judicial whim, the point of reducing them to writing would be lost." *Id.* at 284.

It is a "fundamental canon of statutory construction" that words generally should be "interpreted as taking their ordinary, contemporary, common meaning … at the time Congress enacted the statute." *Wis. Cent.* at 284 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences." *Id.*

If Congress wanted to extend the private right of action to text messages in Section 227(c)(5), it knows how to do so. Twice, since 1991, it has exercised its authority to amend the statute. Twice, in 2018 and again in 2019, Congress has determined not to amend subsection (c)(5) where it uses the narrower term "telephone call," which coexists with subsection (b)(3)'s broader term "call."

Congress has never amended the TCPA so that subsection (c)(5)'s "telephone call" instead reads "telephone call or message" like in subsection (a)(4) or "any call" like in subsection (b)(1)(A). It knows what a "text message" is and what it is not. § 227(e), (h) & (i). Congress has decided when to include a "message" in the disjunctive with a "telephone call," and when to omit it. § 227(a)(4), (b)(1)(A), (h) & (i); *cf.* (c)(5).

In construing the private right of action in (c)(5), distinct from that in (b)(3), this Court does not correctly add words like "call or message" from (a)(4) or "any call" from (b)(1)(A), neither of which are written in (c)(5). Nor can it omit words that Congress included in (c)(5), like the noun modifier "telephone" with "call" that are written there. *See Wis. Cent.*, 585 U.S. at 279 (analyzing and distinguishing the narrower term "money remuneration" from the broader term "remuneration"). To do

BUCHALTER LLP
IRVINE

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**

Case No. 3:26-cv-01899-JD

so presumes Congress does not have the competence, legitimacy, and authority to write what it means in (c)(5), and strays from the best reading of statute. *Id.* at 284.

### E.    The FCC's Rulings Do Not — and Cannot — Enlarge the Private Right of Action Congress Wrote in Section 227(c)(5)

After *Loper Bright*, it is the role of the courts "to independently interpret [statutes] and effectuate the will of Congress subject to constitutional limits" (603 U.S. at 371) reaching "'the reading the court would have reached' if no agency were involved" (*id.* at 400). An agency's interpretation may carry the "power to persuade," but it lacks the "power to control." *Id.* at 402.

The Supreme Court recently applied that same principle to the FCC's interpretation of the TCPA. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). In an enforcement proceeding, a district court "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* Appropriate respect is not deference, and respect cannot turn a "telephone call" into a "text message."

The FCC has not interpreted the words "telephone call" in Section 227(c)(5) to include text messages. In its 2003 Order, the FCC affirmed that "it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number," and stated that this prohibition "encompasses both voice calls and text calls to wireless numbers." *In re Rules & Reguls., Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) ("2003 Order").

That pronouncement construed the autodialer and prerecorded-voice prohibitions of Section 227(b) — the only provision Paragraph 165 references — not Section 227(c). *Id.*, ¶ 1, nn.603, 605 & 607 (https://www.federalregister.gov/d/03-18766/p-9); see *Jones*, 792 F. Supp. 3d at 900 ("[o]n its face and as just detailed, the 2003 Order explicitly references only Section 227(b).").

The FCC's differing treatment of the two subsections has apparent logic since Congress itself found "automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls." 2003 Order ¶ 165 n.607 (https://www.federalregister.gov/d/03-18766/p-132).   Congress   could   likewise "reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter." *Davis*, 797 F. Supp. 3d at 1274.

Nor does 47 C.F.R. § 64.1200(e) change the analysis. That regulation makes the FCC's do-not-call rules "applicable to any person or entity making … telemarketing calls or text messages to wireless telephone numbers to the extent described in the [2003 Order]" — an order that addressed subsection (b)(1), not subsection (c)(5).

When the FCC wants to equate calls and text messages, it says so directly: "As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call." 47 C.F.R. § 64.1200(a)(9). The FCC has never said anything comparable about the words "telephone call" in Section 227(c)(5). See *Jones*, 792 F. Supp. 3d at 901 ("[t]he FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).").

More fundamentally, even a regulation that reached telemarketing text messages could not enlarge the private right of action Congress wrote. "[P]rivate rights of action to enforce federal law must be created by Congress," and an agency "may play the sorcerer's apprentice but not the sorcerer himself." *Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001); *see Stoneridge Inv. Partners, LLC v. Sci.- Atlanta, Inc.*, 552 U.S. 148, 165 (2008) ("The decision to extend the cause of action is for Congress, not for us.").

Section 227(c)(5) imposes two independent requirements: the plaintiff must have received [1] "more than one telephone call" [2] "in violation of the regulations prescribed under this subsection." The second clause identifies which telephone calls are actionable. It does not — and cannot — redefine what a "telephone call" is. The FCC may decide what its do-not-call rules prohibit, but only Congress decides who may sue.

There is no anomaly in this reading. A telemarketer who sends telemarketing text messages to a registered number may still violate the FCC's rules — a violation enforceable by the Commission and by state attorneys general, see 47 U.S.C. § 227(g) — and a text message sent using an automatic telephone dialing system or an artificial or prerecorded voice remains privately actionable under Section 227(b)(3). Congress allocates enforcement authority among different actors. For the private remedy in Section 227(c)(5), the words Congress chose are "telephone call," not "text message," and those words govern.

At bottom, reading the words "text message" into "telephone call" is not an interpretation of the TCPA's plain language. It requires something altogether different: rewriting the statute to interpose new and additional words that do not appear there. *Jones*, 792 F. Supp. 3d at 901 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology …. The Court confines itself to its assigned role which does not include legislating"); *Davis*, 797 F. Supp. 3d at 1274 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose. Instead, the best evidence of that purpose is the language of the statute itself."); *Richards*, 2026 WL 847568, at *5 (same); Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 344 (2012) ("Today, however, the 'spirit' of laws is the unhappy interpretive conception of a supposedly better policy than can be found in the words of an authoritative text. It is an unreliable nonstandard.").

BUCHALTER LLP
IRVINE

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

## V.   CONCLUSION

For all these reasons, Plaintiff's causes of action based on receiving text messages from Bonneville fail to state a claim under 47 U.S.C. § 227(c)(5). Because Plaintiff cannot cure this pleading deficiency by amendment, and no issues of material fact remain to be resolved, the Court should grant Bonneville's motion to dismiss without leave to amend.

Respectfully submitted,

Dated: July 10, 2026        BUCHALTER LLP


By:  /s/ Artin Betpera
         ARTIN BETPERA

Attorneys for Defendant
Bonneville International Corporation

BUCHALTER LLP
IRVINE

23

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**        Case No. 3:26-cv-01899-JD