Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

*Local Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AUSSIEKER, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>BONNEVILE INTERNATIONAL CORPORATON d/b/a KNCI FM RADIO<br><br>Defendant. | Case No. 3:26-cv-01899-JD<br><br>**PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS COMPLAINT**<br><br>DATE: October 8, 2026<br>TIME: 10:00 a.m.<br>CTRM: 11, 19th Floor |

## TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................**4**

**BACKGROUND** ................................................................................................**5**

**ARGUMENT** .....................................................................................................**5**

**I. The Ninth Circuit has Repeatedly Made Clear that Text Messages are Calls under the TCPA, and it did so again Earlier this Year.**...........................**5**

a. Earlier this year, the Ninth Circuit Unequivocally Stated that a "text message" Constitutes a "call" within the meaning of the TCPA. .......................6

b. Defendant's Interpretation Cannot Be Reconciled with the Text and Structure of § 227(c). ....................................................................................11

c. The plain meaning of the word "call" includes text messages .....................13

d. The Seventh Circuit's Decision in *Steidinger* Does Not Change the Analysis, Because This Court Is Bound by *Howard*..........................................................17

**CONCLUSION**.................................................................................................**18**

# TABLE OF AUTHORITIES

**Cases**

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*,
    708 F.3d 737 (6th Cir. 2013) .................................................................16

*Breda v. Cellco P'ship*,
    934 F.3d 1 (1st Cir. 2019) ...................................................................11

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) ...................................................................... 16, 17

*Chevron v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) .............................................................................7

*D'Agostino v. Circle K Stores Inc.*,
    2026 U.S. Dist. LEXIS 89449 (D. Ariz. Apr. 22, 2026) ............................ 10, 11

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018) ................................................................11

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ...........................................................................13

*Hopkins v. HomeLight, Inc.*,
    No. 26-cv-5017-BHS, 2026 WL 2017320 (W.D. Wash. July 13, 2026).............11

*Howard v. Republican Nat'l Comm.*,
    164 F.4th 1119 (9th Cir. 2026).......... 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18

*Jones v. Blackstone Med. Servs., LLC*,
    792 F. Supp. 3d 894 (C.D. Ill. 2025)...................................................10

*King v. Burwell*,
    576 U.S. 473 (2015) ...........................................................................13

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ...................................................... 6, 7, 10, 11, 17

*Lozano v. Twentieth Century Fox Film Corp.*,
    702 F. Supp. 2d 999 (N.D. Ill. 2010)...............................................6, 16

*Mujahid v. Newity, LLC*,
    2025 WL 3140725 (N.D. Ill. Nov. 10, 2025).........................................6

*Rubin v. Staples, Inc.*,
    No. 2:25-15515 (WJM), 2026 WL 881651 (D.N.J. Mar. 31, 2026) .....................9

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ................................. 5, 6, 7, 8, 9, 10, 12, 14, 16, 17
*Steidinger v. Blackstone Med. Servs., LLC*,
  No. 25-2398, --- F.4th ---, 2026 WL 2028517 (7th Cir. July 14, 2026) .............17
*Stockdale v. Skymount Prop. Group, LLC*,
  No. 1:25 CV 1282, 2026 U.S. Dist. LEXIS 42954, 2026 WL 591842 (N.D. Ohio
  Mar. 3, 2026) ................................................................ 10, 15, 16
*Trim v. Reward Zone USA LLC*,
  76 F.4th 1157 (9th Cir. 2023)................................................................8, 18
*United States Postal Serv. v. Konan*,
  146 S. Ct. 736 (2026).........................................................................16
*United States v. Ezeta*,
  752 F.3d 1182 (9th Cir. 2014) .............................................................13
*Wilson v. Better Mortgage Corp.*,
  No. 25 Civ. 5503, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) ........................16
*Wilson v. Easy Spirit, LLC*,
  No. 3:25-CV-112 (SFR), 2026 WL 884170 (D. Conn. Mar. 31, 2026)...............12
*Wilson v. Medvidi*,
  2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ......................................4, 6
*Wilson v. Skopos Fin., LLC*,
  No. 6:25-CV-00376-MC, 2025 WL 2029274 (D. Or. July 21, 2025) ..................6
*Wisconsin Central Ltd. v. United States*,
  585 U.S. 274 (2018) ................................................................ 14, 15

**Statutes**
47 U.S.C. § 227 ................................................. 4, 6, 7, 8, 9, 10, 11, 12, 13, 17, 18

**Regulations**
47 C.F.R. § 64.1200(e)................................................................ 13, 18

**Other Authorities**
18 FCC Rcd. 14014, 14115 ¶ 165 (2003) ...............................................5
Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, § 503(a)(2)....9, 12

## INTRODUCTION

Defendant asks this Court to hold that telemarketing text messages are not actionable under the TCPA's Do Not Call provisions, contrary to overwhelming authority, including in the Ninth Circuit, consistently holding the opposite.

The Ninth Circuit recently reaffirmed that "a text message constitutes a call within the meaning of the TCPA" and expressly held that conclusion remains correct even in the absence of *Chevron* deference. *Howard v. Republican Nat'l Comm.,* 164 F.4th 1119, 1123–24 (9th Cir. 2026). Although *Howard* was a case brought under § 227(b), numerous courts have since applied that reasoning to claims brought under § 227(c), holding that telemarketing text s are actionable under the TCPA's National Do Not Call provisions since the same words in the same statute generally have the same meaning. *See, e.g.*, *Taha v. Momentive Software, Inc.,* 2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026); *Wilson v. Medvidi,* 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025).

Defendant's contrary position would create an untenable result. The FCC's regulations promulgated under § 227(c) expressly regulate "telemarketing calls or text messages," yet Defendant contends consumers cannot enforce those regulations when the unlawful solicitation arrives by text message rather than voice call. Nothing in the TCPA's text, structure, purpose, or history supports that result. Because Plaintiff plausibly alleges that Defendant repeatedly transmitted

OPPOSITION TO THE MOTION TO DISMISS
*Mark Aussieker v. Bonneville International Corporation d/b/a KNCI FM Radio*
-4-

telemarketing text messages to a telephone number listed on the National Do Not Call Registry, Defendant's motion should be denied.

## BACKGROUND

Plaintiff Mark Aussieker brings this action under the Telephone Consumer Protection Act ("TCPA") arising from Defendant Bonneville International Corporation's transmission of multiple telemarketing text messages to Plaintiff's telephone number despite its registration on the National Do Not Call Registry, including texts sent after he told the company to stop. ECF No. 1 ¶¶ 3, 18–19.

## ARGUMENT

I.    **The Ninth Circuit has Repeatedly Made Clear that Text Messages are Calls under the TCPA, and it did so again Earlier this Year.**

Although text messaging did not exist when Congress enacted the TCPA in 1991, that does not resolve the question presented here. As both the FCC and the Ninth Circuit have recognized, the ordinary meaning of the word "call" encompasses communications made by telephone, including text messages. *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123-24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no

less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Luckily for consumers nationwide, Defendant's arguments have been nearly uniformly rejected in this Circuit consistent with what the Ninth Circuit Court of Appeals held earlier this year with respect to text messages in *Howard*, 164 F.4th at 1121 ("a 'text message' constitutes a 'call' within the meaning of the TCPA").

**a.** ***Earlier this year, the Ninth Circuit Unequivocally Stated that a "text message" Constitutes a "call" within the meaning of the TCPA.***

Since *Satterfield*, no Court in the Ninth Circuit has dismissed a TCPA case holding that a text message is not a call. The argument is foreclosed. Indeed, in *Howard*, the Ninth Circuit affirmed *Satterfield*'s central holding:

> We have previously held that, under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), it was "reasonable" to defer to the FCC's conclusion that the term "call" in § 227 includes a "text message." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, we think it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) ("*Chevron* is overruled."). *Satterfield* emphasized two key points about statutory construction that supported the FCC's understanding of a "call," *see Satterfield*, 569 F.3d at 953–54, and even under de novo review, those same two points support the conclusion that a "text message" constitutes a "call" within the meaning of the TCPA… the RNC's text message was a 'call.'

*Howard*, 164 F.4th at 1123. Defendant's motion proceeds from the premise that *Satterfield* survives, if at all, only as a product of *Chevron* deference. *Howard* expressly rejected that premise. The Ninth Circuit acknowledged that *Satterfield* had originally discussed the FCC's interpretation, but then held that "the conclusion would be the same even in the absence of *Chevron* deference." *Id.*

Accordingly, Defendant's repeated reliance on *Loper Bright* misses the mark. Howard already performed the exact analysis Defendant claims is required and reached the same conclusion *Satterfield* reached years earlier. Whatever force Defendant's *Loper Bright* arguments might have carried before *Howard*, they cannot overcome a Ninth Circuit decision expressly holding that the result remains unchanged under de novo review. And to the extent Defendant argues that *Howard*

was limited to claims asserted under Section 227(b), this argument was squarely addressed, and rejected, in *Taha*:

> While both cases reached these decisions in the context of analyzing § 227(b) of the TCPA, rather than § 227(c)(5) at issue here, neither *Satterfield* nor *Howard* elected to use language to limit the scope of their holdings. Both cases state that their holdings apply to "the TCPA," and that is how this Court interprets them.
>
> Defendant argues that the addition of the word "telephone" changes the textual analysis when it comes to § 227(c)(5). However, this argument overemphasizes the significance of the word "telephone" in this context. "Telephone" is even used in the dictionary definition of "call" relied upon by the *Satterfield* and *Howard* courts. *See* Webster's Third New International Dictionary 318 (1981 ed.) ("call" means a "communicat[ion] with or [an attempt] to get in communication with a person by telephone"). To argue that the addition of the word "telephone" eliminates text messages ignores the redundancy of the term inherent to this definition. Defendant argues that "[b]oth at [the inception of the TCPA] and now, 'telephone call' means only a telephonic voice transmission." Ironically, the Ninth Circuit already expressed how Congress would make such a limitation in *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023), which is reference in *Howard*. In *Trim*, the Ninth Circuit held that the text messages at issue did not qualify under the TCPA because "because they did not include audible components" which contrasted with Congress's use of the word "voice" in the statute at issue. 76 F.4th at 1158, 1160-61 (analyzing "the disputed term—'voice'" in the context of 47 U.S.C. § 227(b)(1)(A)). Thus, had Congress intended to eliminate textual communications from § 227(c)(5) it would have used the phrase "voice call," rather than "telephone call."

*Taha*, 2026 U.S. Dist. LEXIS 54376, at *7-*8 (cleaned up).

Defendant's final argument is that Congress's later use of "text message" in § 227(e) shows Congress understood "telephone call" elsewhere in the TCPA to exclude texts. On close examination, however, it cuts decisively the other way.

Two points compound to defeat it.

*First*, § 227(e)(8) defines its terms "[f]or purposes of this subsection." 47 U.S.C. § 227(e)(8). That subsection-specific definition does not purport to limit the use of the word "call" elsewhere in § 227, including § 227(c). *See Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *7 (D. Conn. Mar. 31, 2026); *Rubin v. Staples, Inc.*, No. 2:25-15515 (WJM), 2026 WL 881651, at *6 (D.N.J. Mar. 31, 2026). *Second*, Defendant's reliance on Congress's 2018 amendments fares no better. When Congress enacted the amendments, the FCC had long interpreted the TCPA to treat text messages as calls, and courts throughout the country—including the Ninth Circuit in *Satterfield*—had likewise recognized that interpretation. Yet Congress left § 227(c) untouched while expressly providing that nothing in the amendments would "modify, limit, or otherwise affect any rule or order adopted by the Commission" under the TCPA. Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, § 503(a)(2). Whatever inference may be drawn from Congress's silence, it is not that Congress intended to abrogate the understanding that text messages are calls in the TCPA.

More importantly, Defendant's argument ultimately proves too much. The relevant question before this Court is not whether Congress could have amended § 227(c)(5) in 2018, but whether the statute, as interpreted by controlling Ninth Circuit precedent, encompasses text messages today. *Howard* answered that

question by independently concluding that a text message constitutes a "call" under the TCPA even after *Loper Bright*. 164 F.4th at 1123–24. Nothing in the 2018 amendments undermines that holding, and nothing in § 227(e) purports to redefine the meaning of "telephone call" for purposes of § 227(c)(5).

Defendant's reliance on the 2018 amendments therefore does not overcome either the statutory text, the FCC's longstanding regulations implementing § 227(c), or the Ninth Circuit's controlling interpretation of the TCPA.

Indeed, in evaluating *Stockdale v. Skymount Prop. Group, LLC*, 1:25 CV 1282, 2026 U.S. Dist. LEXIS 42954, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026), the same case that the Defendant cites for this proposition, district courts in the Ninth Circuit have uniformly rejected it. *See, e.g., Taha*, 2026 U.S. Dist. LEXIS 54376, at *7–8; *D'Agostino v. Circle K Stores Inc.,* 2026 U.S. Dist. LEXIS 89449, at *14–15 (D. Ariz. Apr. 22, 2026).

Defendant's reliance on *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), fares no better. *Jones* never addressed the Ninth Circuit's controlling framework in *Howard* or *Satterfield*. Although the Seventh Circuit later affirmed *Blackstone*, see discussion *infra*, even that case cannot displace controlling Ninth Circuit precedent. *See Taha*, 2026 U.S. Dist. LEXIS 54376, at *7–8; *D'Agostino*, 2026 U.S. Dist. LEXIS 89449, at *14–15. Indeed, just days after Defendant filed this motion, another district court within this Circuit

confronted the identical argument Defendant raises here, including Defendant's reliance on *Jones* itself, and rejected it, applying "the governing law of this Circuit" to hold that text messages constitute a call under § 227(c). *Hopkins v. HomeLight, Inc.*, No. 26-cv-5017-BHS, 2026 WL 2017320, at *3–4 (W.D. Wash. July 13, 2026) (rejecting *Jones* and other out-of-circuit authority as non-binding).

The conclusion that text messages qualify as calls under the TCPA is not unique to the Ninth Circuit. Other courts have that text messages fall within the statute's coverage. *See e.g. Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("we have held that, under the TCPA, [calls] encompass[] text messages"). The emerging consensus is unmistakable. *Howard* held that a text message constitutes a call under the TCPA even under *de novo* review after *Loper Bright*. *Taha* applied that holding to § 227(c)(5) and rejected the precise argument Defendant advances here. And *D'Agostino* recently recognized that, at least within the Ninth Circuit, there is "no question" that unsolicited text messages may give rise to TCPA liability. Defendant's position is simply at odds with an overwhelming amount of authority stating the contrary.

**b. *Defendant's Interpretation Cannot Be Reconciled with the Text and Structure of § 227(c).***

The core of § 227(c) is Congress's directive that the FCC establish and enforce

a national do-not-call regime governing "telephone solicitations." 47 U.S.C. § 227(c)(1), (3)(F). Congress defined a "telephone solicitation" to include "the initiation of a telephone call or message . . . which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). As explained above, the Ninth Circuit has held that a text message is a "call" under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009); *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123-24 (9th Cir. 2026). Nothing in § 227(c) suggests Congress intended the term "telephone solicitation" to exclude telemarketing text messages.

Defendant's reliance on the 2018 amendments to § 227(e) fares no better. Section 227(e)(8) expressly provides definitions only "[f]or purposes of this subsection," and Congress further directed that nothing in those amendments "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC]" under the TCPA. Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, § 503(a)(2). Thus, the amendments neither redefine "telephone call" in § 227(c) nor undermine longstanding FCC and judicial interpretation that text messages are calls under the TCPA. See, e.g., *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *8 (D. Conn. Mar. 31, 2026); *Newell v. Children's Dental Health Assocs., LLC*, No. 2:25-cv-05238, ECF No. 25 (E.D. Pa. Apr. 6, 2026).

Defendant's reading also cannot be reconciled with § 227(c)(5), which creates a private right of action for persons who receive more than one telephone solicitation

"in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Those regulations expressly apply to telemarketing "calls or text messages." 47 C.F.R. § 64.1200(e). Under Defendant's interpretation, telemarketing text messages could violate the FCC's regulations yet remain beyond the reach of the very private right of action Congress created to enforce them. Nothing in the statutory text suggests Congress intended such a result.

Courts interpret statutes as coherent regulatory schemes, not by isolating individual words or phrases. See *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *King v. Burwell*, 576 U.S. 473, 492 (2015). Reading § 227(c)(5) in harmony with the regulations it expressly incorporates gives effect to the entire statutory scheme. Defendant's interpretation, by contrast, would sever the private enforcement mechanism from the regulations Congress authorized the FCC to promulgate and would render the FCC's regulation of telemarketing text messages largely unenforceable by private litigants. The Court should reject that construction.

### c. *The plain meaning of the word "call" includes text messages*

To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See United States v. Ezeta*, 752 F.3d 1182, 1185 (9th Cir. 2014) ("To determine a word's plain and ordinary meaning, we may refer to standard English language dictionaries.") Courts have long recognized that the word "call" in the

TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

Defendant's dictionary analysis improperly isolates the word "telephone" from the phrase Congress actually used: "telephone call." The relevant question is not whether a telephone historically transmitted sound, but whether a text message constitutes a communication made by telephone. *Howard* and *Satterfield* answered that question in the affirmative. Defendant's approach also produces arbitrary results. Under its theory, the same smartphone would qualify as a telephone when used to place a voice call but somehow cease functioning as a telephone when used to send a text message. Nothing in the statutory text supports such a distinction.

Defendant's reliance on *Wisconsin Central* fares no better. In *Wisconsin Central*, the Supreme Court interpreted the phrase "money remuneration" and held that stock options were not "money." 585 U.S. 274, 278–84 (2018). The Court's reasoning depended upon the fact that stock is not money. That reasoning does not translate to the TCPA. Defendant assumes that text messages are not telephone communications and then uses that assumption to conclude that the modifier

"telephone" excludes them. But text messages are telephone communications. They are sent from telephone numbers, received at telephone numbers, transmitted over telecommunications networks, and delivered to telephones. *Howard* expressly recognized that reality when it reaffirmed that "a text message constitutes a call within the meaning of the TCPA." 164 F.4th at 1123–24. *Wisconsin Central* therefore does not help Defendant. The modifier "telephone" does not exclude text messages in the way the modifier "money" excluded stock options because text messages are themselves a form of telephonic communication. Defendant's argument merely repackages the very premise *Howard* rejected.

As noted by the *Taha* Court, the basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025). In this respect, the *Stockdale* court simply appears to have cherrypicked definitions from other dictionaries in support of its proposition while ignoring the vast majority

of other dictionaries that defined a "telephone call" simply as a "call," which itself indicates no preference for vocal communication. "Although many people assume that the first sense listed in a dictionary is the 'main' sense, that is often quite untrue." *United States Postal Serv. v. Konan*, 146 S. Ct. 736, 745 (2026). The definitions the *Stockdale* Court pointed to were the oldest, not primary. And we "do not presume that Congress intended the *oldest* usage, but rather the ordinary one in" 1991, and contemporaneous evidence shows that Congress understood text-based telephone calls to be "calls" in 1991. *Id.*; *see* Section I.c, *supra*.

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007. Texting is a means of communicating with someone by telephone. So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24.

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S.

153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"). So even post-*Loper Bright*, the significant weight of case authority supports interpreting "call" to include text messages.

**d.    The Seventh Circuit's Decision in *Steidinger* Does Not Change the Analysis, Because This Court Is Bound by *Howard*.**

Defendant will likely observe in reply that the Seventh Circuit recently held that § 227(c)(5) does not reach text messages. *Steidinger v. Blackstone Med. Servs., LLC*, No. 25-2398, --- F.4th ---, 2026 WL 2028517 (7th Cir. July 14, 2026). But *Steidinger* never engaged *Howard* or *Taha*'s reasoning. The panel disposed of *Howard* in a parenthetical and explained that *Breda* and *Melito* "were decided based on *Campbell-Ewald*," and that the cited cases arose under § 227(b). *Id.* at *4. But *Howard* was decided in 2026, and rested on neither that case nor deference. *Howard*, which binds this Court, performed *precisely* the independent, *de novo* textual analysis that *Steidinger* faulted the other decisions for lacking, and it reached the opposite result. 164 F.4th at 1123-25. A decision that sets aside circuit precedent without confronting its reasoning gives this Court no reason to do the same.

*Howard*'s analysis is also the better one, as *Taha* recognized in rejecting the identical argument Defendant makes here. *Steidinger* adopted a 1991 definition of "call," "to get or try to get into communication by telephone," that is materially the same functional definition *Satterfield* and *Howard* applied. But that definition asks

*how* one communicated, not whether it was audible. The panel nonetheless imported an audibility requirement from the separate dictionary entry for the *instrument*, effectively reading "telephone call" to mean "voice call." Congress knows how to say that. In *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023), the Ninth Circuit held that text messages fell outside a provision keyed to an artificial or prerecorded "voice," precisely because Congress used the word "voice." Congress did not use it in § 227(c)(5). *See Taha*, 2026 U.S. Dist. LEXIS 54376, at *7-8.

The panel's remaining rationales are no stronger. Its fax analogy proves the opposite of what it was offered for, since faxes are messages delivered over telephone lines, which carry telephone calls. Its holding also assigns "call" two different meanings within a single statute contrary to the presumption that a given term is used to mean the same thing. And its answer to 47 C.F.R. § 64.1200(e), that § 227(c)(5)'s reference to "regulations" merely identifies which calls are actionable, leaves intact the mismatch that reading creates, with the FCC forbidding texts under subsection (c)'s rules without an enforcement mechanism. Unless and until the Ninth Circuit or the Supreme Court holds otherwise, *Howard* controls.

## CONCLUSION

For decades, courts, the FCC, and Congress have understood text messages to qualify as calls under the TCPA. The Ninth Circuit reaffirmed that principle in *Howard* and has been rejected. The Motion should be denied.

Dated: July 23, 2026            PLAINTIFF, on behalf of himself
                                and others similarly situated,

                                */s/ Anthony I. Paronich*
                                Anthony I. Paronich
                                Paronich Law, P.C.
                                350 Lincoln Street, Suite 2400
                                Hingham, MA 02043
                                (508) 221-1510
                                anthony@paronichlaw.com