BUCHALTER LLP
ARTIN BETPERA (SBN: 244477)
ROBERT C. LITTLE (SBN: 182396)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant
Bonneville International Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AUSSIEKER,<br><br>Plaintiff,<br><br>vs.<br><br>BONNEVILLE INTERNATIONAL CORPORATION,<br><br>Defendant. | Case No. 3:26-cv-01899-JD<br>*Assigned to the Honorable James Donato*<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>DATE:  October 8, 2026<br>TIME:   10:00 a.m.<br>CTRM:  11, 19th Floor |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................................6

II.   LEGAL ANALYSIS AND ARGUMENT ...................................................7

    A.    *Steidinger*, the first court of appeals decision on the question presented, holds that a text message is not a "telephone call" under § 227(c)(5) ..................................................................................7

    B.    *Howard* binds this Court on the question it decided—the word "call" in § 227(b)—not on a phrase it never construed ......................10

    C.    The opposition's textual arguments rewrite the statute rather than read it..................................................................................................12

    D.    Neither the FCC's rules nor the 2018 saving clause enlarges the private right Congress wrote ..............................................................14

III.  CONCLUSION .......................................................................................15

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]**    Case No. 3:26-cv-01899-JD

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001)...............................................................................................9, 14

*Bostock v. Clayton County*,
590 U.S. 644 (2020)......................................................................................................7

*Breda v. Cellco P'ship*,
934 F.3d 1 (1st Cir. 2019)...........................................................................................11

*Camreta v. Greene*,
563 U.S. 692 (2011)....................................................................................................11

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)........................................................................................8, 10, 11

*Cohens v. Virginia*,
19 U.S. (6 Wheat.) 264 (1821) ...................................................................................10

*D'Agostino v. Circle K Stores Inc.*,
2026 U.S. Dist. LEXIS 89449 (D. Ariz. Apr. 22, 2026)...................................11

*Dominguez v. Yahoo, Inc.*,
894 F.3d 116 (3d Cir. 2018)........................................................................................11

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)..........................................................................................8, 9, 10

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)....................................................................................................13

*Hopkins v. HomeLight, Inc.*,
No. 26-cv-5017-BHS, 2026 WL 2017320 (W.D. Wash. July 13,
2026) ...........................................................................................................................11

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026)...................................................................... 7, 9, 10, 11

BUCHALTER LLP
IRVINE

3

*Jones v. Blackstone Med. Servs., LLC*,
    792 F. Supp. 3d 894 (C.D. Ill. 2025), aff'd sub nom. *Steidinger v. Blackstone Med. Servs., LLC*, 2026 WL 2028517 (7th Cir. July 14, 2026) ................................................................................6, 7

*Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*,
    346 F.3d 1190, 1192 (9th Cir. 2003) ...............................................................12

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)..................................................................................10, 15

*Matter of Erickson*,
    815 F.2d 1090 (7th Cir. 1987)..........................................................................8

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025)........................................................................................15

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009)...........................................................................10

*Steidinger v. Blackstone Med. Servs., LLC*,
    No. 25-2398, --- F.4th ----, 2026 WL 2028517 (7th Cir. July 14, 2026) ...........................................................................................passim

*Stockdale v. Skymount Prop. Group, LLC*,
    No. 1:25 CV 1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026) .....................13

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
    552 U.S. 148 (2008)........................................................................................14

*Sw. Airlines Co. v. Saxon*,
    596 U.S. 450 (2022)..........................................................................................8

*Taha v. Momentive Software, Inc.*,
    No. 8:25-CV-02330-DOC-JDE, 2026 WL 974297 (C.D. Cal. Mar. 11, 2026)..................................................................................................11

*Trim v. Reward Zone USA LLC*,
    76 F.4th 1157 (9th Cir. 2023)..........................................................................12

*Webster v. Fall*,
    266 U.S. 507 (1925)........................................................................................10

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

*Wisconsin Central Ltd. v. United States*,
   585 U.S. 274 (2018)................................................................................7, 12, 13

**CALIFORNIA CASES**

*People v. Ramirez*,
   104 Cal. App. 5th 315 (2024).......................................................................6

**FEDERAL STATUTES**

47 U.S.C. § 227(a)(4)..........................................................................6, 8, 12

47 U.S.C. § 227(b)(3) ..........................................................................6, 8, 14

47 U.S.C. § 227(c)(5).................................................................................passim

47 U.S.C. § 227(e) ..........................................................................7, 9, 12, 14

47 U.S.C. § 227(g).....................................................................................14

Pub. L. No. 115-141, div. P, tit. V, § 503(d), 132 Stat. 348, 1094
   (2018) .................................................................................................14

**FEDERAL REGULATIONS**

47 C.F.R. § 64.1200(e)............................................................................9, 14

**RULES**

Fed. R. Civ. P. 12(b)(6)...............................................................................15

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION</u>

It has been said that words are to lawyers as scalpels are to surgeons, since both are tools to be used with precision.[1] Plaintiff's opposition trades scalpel for paintbrush. The opposition describes § 227(c)(5) as a statute "which creates a private right of action for persons who receive more than one *telephone solicitation* 'in violation of the regulations prescribed under this subsection.'" Opp. 12:25–13:2 (emphasis added). That is not the statute.

Congress conferred the right of action on a "person who has received more than one *telephone call*." 47 U.S.C. § 227(c)(5) (emphasis added). Contrary to the opposition's incorrect quotation of the statute, "telephone solicitation" is a different — and far broader — term. The TCPA defines it to include "the initiation of a telephone call *or message*," § 227(a)(4), and Congress used it in §§ 227(c)(1) through (c)(4), before conspicuously omitting it from (c)(5). Mot. 11:2–14:22. The opposition's substitution of "telephone solicitation" for "telephone call" gives away the argument. Plaintiff could state a claim under the statute as he rewrites it, but not under the statute as Congress wrote it.

Four days after Bonneville moved to dismiss, the first federal court of appeals in the country decided the question the Rule 12(b)(6) motion presents. Mot. 9:3-10. The Seventh Circuit answered the question exactly as Bonneville did. *Id.* In *Steidinger v. Blackstone Medical Services, LLC*, No. 25-2398, --- F.4th ----, 2026 WL 2028517 (7th Cir. July 14, 2026), a unanimous Seventh Circuit panel affirmed *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), the district court reasoning Bonneville cites throughout its motion. *See*, *e.g.*, Mot. 12:17–13:3, 17:23–24 n.7; 20:24–21:20. The Seventh Circuit held: "Because we conclude that § 227(c)(5) does not permit plaintiffs to sue for the receipt of unwanted texts, we affirm." *Steidinger*, 2026 WL 2028517, at *1.

---

[1]    *People v. Ramirez*, 104 Cal. App. 5th 315, 320 (2024).

BUCHALTER LLP
IRVINE

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

The court's reasoning tracks Bonneville's analysis step by step: the ordinary 1991 meaning of "telephone call"; the contrast between "telephone call" and the defined term "telephone solicitation"; the differently worded private rights of action in §§ 227(b)(3) and 227(c)(5); the FCC's construction of § 227(b) rather than § 227(c)(5); and Congress's decision in 2018 to legislate about text messages in § 227(e) while leaving § 227(c)(5) alone. *Steidinger,* 2026 WL 2028517, at *2–5.

Plaintiff's answer is *Howard* — which, as he concedes, "was a case brought under § 227(b)," *not* § 227(c)(5). Opp. 4:10-11. Bonneville acknowledged *Howard* and accepted it. Mot. 9:11-20, 15:1-28. But the issue here is about a phrase *Howard* never construed, in a statutory subsection *Howard* never cited. Plaintiff's opposition extends *Howard* by *relabeling*, while *Steidinger* answers the question by *reading*. The Court should grant Bonneville's motion and dismiss Plaintiff's complaint.

## II.    LEGAL ANALYSIS AND ARGUMENT

### A.    *Steidinger*, the first court of appeals decision on the question presented, holds that a text message is not a "telephone call" under § 227(c)(5)

*Steidinger* is this case in appellate form. *See* Compl. ¶¶ 13–18, 21–26, 39, 49–58. Consumers alleged that Blackstone Medical Services sent them marketing text messages—texts that kept coming after they replied "STOP" and after they registered their numbers on the National Do-Not-Call Registry—so they sued under § 227(c)(5). *Steidinger*, 2026 WL 2028517, at *1. The district court dismissed because § 227(c)(5) "creates a private right of action for an individual 'who has received more than one telephone call'" and "does not cover text messages." *Id.* at *1; *see Jones*, 792 F. Supp. 3d at 899–901. Reviewing de novo, with the question contested, the Seventh Circuit affirmed.

The court began where Bonneville's motion began, with the "ordinary public meaning of [the statute's] terms at the time of its enactment." *Id.* at *2 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 654 (2020)); *see* Mot. 11:4–15:1, 12:14-

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

23. In 1991, a telephone was "[a]n instrument for reproducing sounds at a distance," and a call meant "to get or try to get into communication by telephone." *Id.* (quoting Webster's Ninth New Collegiate Dictionary (1991)). "Thus, in 1991, a 'telephone call' referred to communication via sound." *Id.* And "[t]ext messages do not reproduce sounds." *Id.*

Applying the same analytical framework Bonneville's motion applies, Mot. 17:13–20:2, the court explained that a statute's meaning is fixed even as new applications arise—and a communication that reproduces no sound is not a new application of a term that meant communication by sound. *Id.*; *see Wis. Cent. Ltd. v. United States,* 585 U.S. 274, 278 (2018). The court rejected "the march of technology," standing alone, as a reason to read the term more broadly. *Id.* at *2 (quoting *Matter of Erickson*, 815 F.2d 1090, 1094 (7th Cir. 1987)).

Context sealed it. Sections 227(c)(1) through (c)(4) use the defined term "telephone solicitation"— "the initiation of a telephone call *or message*," § 227(a)(4) — yet § 227(c)(5) "only creates a private right of action for the receipt of more than one 'telephone call'" within a 12-month period. 2026 WL 2028517, at *2. "It doesn't mention telephone messages, nor does it use the more encompassing term, telephone solicitation." *Id.* Because Congress "used a different term in these two subsections of § 227, it intended a different meaning." *Id.* at *3 (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022)).

The best reading is a "narrower remedy." *Steidinger*, 2026 WL 2028517, at *3. "[P]laintiffs may sue after receiving unwanted telephone calls, but not unwanted telephone solicitations (which include not merely calls but also messages)." *Id.* The two private rights of action draw the same line: § 227(b)(3) authorizes suit for a "violation of this subsection or the regulations prescribed under this subsection," while § 227(c)(5) requires "more than one telephone call"—"a difference in language that both explains and supports our conclusion that § 227(c)(5) does not apply to text messages." *Id.* at *5; *accord* Mot. 11:20–12:1.

BUCHALTER LLP
IRVINE

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

The court addressed the very authorities Plaintiff presents here and explained why none decided this question. *Campbell-Ewald*'s remark that a text "qualifies as a 'call'" was "not a substantive decision on the meaning of 'call,' just an assumption," as the Supreme Court itself later explained: because neither party disputed the point, the Court would "assume that it does without considering or resolving that issue." *Steidinger*, 2026 WL 2028517, at *3 (quoting *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 & n.2 (2021) (*Duguid*)) (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, *it is undisputed*, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." (emphasis added))). Where the issue *is* disputed, courts "confront a question that the Supreme Court hasn't answered." *Id.*

The Seventh Circuit set its own § 227(b) precedents to one side for that reason, *id.* at *4, distinguishing *Howard* by name and by subsection: *Howard* "consider[ed] a claim under § 227(b)," and "all of these cases" — the out-of-circuit decisions Plaintiff's brief echoes — "concern claims brought under § 227(b), not § 227(c)(5)." *Id.* The court's reasoning mirrors Bonneville's analysis. Mot. 16:21–17:8 & nn.6–7.

On the FCC, *Steidinger* holds what Bonneville's motion argues at Mot. 19:3–22:7. The FCC "has not engaged in rulemaking to define the term for the purpose of § 227(c)(5)." 2026 WL 2028517, at *4. The FCC's 2024 extension of Do-Not-Call protections to texts, codified at 47 C.F.R. § 64.1200(e), was adopted under § 227(c)(3), "which refers to 'telephone solicitations,' so the FCC's interpretation doesn't inform our understanding of § 227(c)(5), which refers only to telephone calls." *Id.* at *4. Subsection (c)(5)'s reference to "the regulations prescribed under this subsection" — the hook for Plaintiff's "mismatch" argument, Opp. 18:10-21 — "simply clarifies which calls—i.e., those that violate relevant regulations—are the basis for a suit." *Id.* at *4. That is Bonneville's analysis. Mot. 21:2-27.

Congressional inaction "cuts both ways." *Id.* at *5; *see* Mot. 13:20–14:22 & nn.2–3. Congress amended § 227(e) in 2018 "to cover text messages" and to define the

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

term. *Id.* "It could have done the same for § 227(c)(5) but did not." *Id.*; *see* Mot. 14:9-18. When Congress makes "only isolated amendments," it is "impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval." *Id.* at *5 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 292 (2001)). Policy fared no better because the TCPA's remedial nature "cannot overcome the clear commands of [§ 227(c)(5)'s] text and the statutory context." *Steidinger*, 2026 WL 2028517, at *5 (quoting *Duguid*, 592 U.S. at 406).

Congress's 1991 findings about telemarketing calls seizing telephone lines needed for emergencies do not describe texts, making it "unsurprising, or at the very least reasonable," that the private right covers calls but not messages. *Id.* at *5. The court closed with Bonneville's enforcement allocation point (Mot. 21:21–22:14): "Repeated, unwanted text messages are undoubtedly a nuisance. But they do not fall within the private right of action created by § 227(c)(5). Instead, spam messages may be curbed through agency action pursuant to other provisions of § 227." *Id.*

Plaintiff brands Bonneville's position "at odds with an overwhelming amount of authority." Opp. 11:21-22; *contra* Mot. 16:21–17:8 & nn.6–7. The tally that matters now reads differently, however. One court of appeals has decided the question presented — unanimously, de novo, in a decision designated for publication — and it affirmed the ruling Bonneville's Rule 12(b)(6) motion asks this Court to make.

**B.    *Howard* binds this Court on the question it decided — the word "call" in § 227(b) — not on a phrase it never construed**

Plaintiff's lead argument — and his only answer to *Steidinger* — is that "*Howard* controls." Opp. 18:19-21; *see id.* at 5:14–11:23, 17:7–18:21. The premise is right, but the conclusion does not follow. Howard controls the § 227(b) question it decided; it does not control the meaning of § 227(c)(5)'s differently worded private right of action. Mot. 9:11-20, 15:1–16:20. District courts are bound by what a court of appeals holds. Reaffirming *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009), following *Loper Bright*'s ending of *Chevron* deference, *Howard* held that "a

'text message' constitutes a 'call' within the meaning of the TCPA." *Howard*, 164 F.4th at 1123–24.

But *Howard* did so in a case arising, as Plaintiff admits, "under § 227(b)." Opp. 4:10-11; *Howard*, 164 F.4th at 1123–24. What *Howard* did nowhere, however, is construe, cite, or even mention § 227(c)(5) or its narrower phrase "telephone call." A court is not "bound" on a question its circuit has never decided, and general expressions are read in light of the case that produced them. Mot. 15:18-25 (citing *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.); *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

That is why Plaintiff's claim that the issue "is foreclosed," Opp. 6:25, assumes too much and goes too far. *Campbell-Ewald* said "undisputed," Opp. 16:26–17:4, because the parties had not disputed the point, exactly why *Duguid* explained that the Court had "assume[d]" it "without considering or resolving that issue." *Duguid*, 592 U.S. at 400 & n.2. Undisputed is not decided. The issue is disputed here, and on it the Supreme Court has not spoken. Neither has the Ninth Circuit.

Plaintiff responds, "*Steidinger* never engaged *Howard* or *Taha*'s reasoning" and "set[] aside circuit precedent without confronting its reasoning." Opp. 17:19-20. Both shots miss. *Steidinger* cited *Howard* by name and identified precisely why it does not answer the question: it "consider[ed] a claim under § 227(b)." *Id.* at *4. There was no § 227(c)(5) reasoning in *Howard* to engage. Nor did *Steidinger* "set aside" any precedent. Opp. 17:19-20. *Howard* is not Seventh Circuit precedent, and on § 227(c)(5) it is not precedent anywhere on this issue, including in the Ninth Circuit.

The district-court decisions extending *Howard* to § 227(c)(5) cannot supply the missing holding. None binds. Mot. 17:9-12 (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)). The district court's unpublished decision in *Taha* — one of Plaintiff's primary authorities — reaches its result only by branding the statutory word "telephone" a "redundancy," the reading the surplusage canon forbids. Mot. 17:3-5 & n.6. *Hopkins* issued on July 13, 2026 — one day before *Steidinger* — never

considered it, and repeats *Taha*'s move under "the governing law of this Circuit," a body of law that contains no § 227(c)(5) holding. Opp. 11:3-6.

*D'Agostino*'s observation that there is "no question" texts can generate "TCPA liability," Opp. 11:18-22, states Bonneville's own position: they can, under § 227(b), but not under § 227(c)(5). Mot. 9:11-20. And *Breda* and *Dominguez* are also § 227(b) decisions resting on *Campbell-Ewald*'s assumption. *Steidinger*, 2026 WL 2028517, at *4; *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018). Plaintiff's "emerging consensus," Opp. 11:14, is district-deep and circuit-empty. Mot. 15:26-28, 16:21–17:12, nn.6–7. At the appellate level, the question has been decided once — and against Plaintiff.

Although *Steidinger* does not bind this Court, the Ninth Circuit ordinarily declines to create a circuit split absent a compelling reason — and Plaintiff supplies none. *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) (adopting sister circuits' rule on a question it had reserved). Rather, Plaintiff takes *Howard*'s § 227(b) holding and relabels it. Opp. 11:7-23, 12:25–13:2.

## C.    The opposition's textual arguments rewrite the statute rather than read it

Start with the rewrite. Plaintiff tells the Court that § 227(c)(5) "creates a private right of action for persons who receive more than one *telephone solicitation* 'in violation of the regulations prescribed under this subsection.'" Opp. 12:25–13:2 (emphasis added). But Congress wrote "more than one *telephone call*." 47 U.S.C. § 227(c)(5) (emphasis added). Plaintiff's substitution of words is his argument: had Congress written "telephone solicitation" — the defined term that includes a "message," § 227(a)(4), and the term Congress used four times in §§ 227(c)(1) through (c)(4) — Plaintiff could then state a claim. But Congress dropped that term exactly where Plaintiff needs it, so he rewrites the statute. Opp. 12:25–13:2; *see Steidinger*, 2026 WL 2028517, at *2–3. An opposition that must rewrite § 227(c)(5) to survive a Rule 12(b)(6) motion has already conceded what § 227(c)(5) says.

Plaintiff's *Trim* argument — that Congress "knows how to say" voice call, Opp. 18:3-9 (citing *Trim v. Reward Zone U.S.A. LLC*, 76 F.4th 1157 (9th Cir. 2023))— cuts the other way. Congress also knows how to say "telephone solicitation"; it used that term throughout § 227(c) before omitting it from (c)(5). And Congress knows how to say "text message"; it used that term in § 227(e) in 2018 and in §§ 227(h) and (i) in 2019. Mot. 13:24–14:18. The interpretive question is never what Congress might have written, but what it wrote — and speculation about the former cannot rewrite the latter. Mot. 17:13–20:2 (quoting *Wis. Cent.*, 585 U.S. at 277–284).

Plaintiff's smartphone point, Opp. 14:15-19 — that the same device would be a "telephone" when calling but not when texting — mistakes the statute's object. The statute classifies communications, not devices. A smartphone also sends email. No one calls an email a telephone call. That one device can initiate several kinds of communication does not merge Congress's categories, any more than stock's ready convertibility into money made stock "money" under the statutes examined by the Supreme Court in *Wisconsin Central*. Mot. 18:20-26. Plaintiff's response that text messages *are* "telephone communications," Opp. 15:1, assumes the conclusion. The question is not whether a text involves a telephone but whether it is a telephone *call*. *Wisconsin Central* instructs that "telephone" limits "call." Mot. 17:13–19:2.

Plaintiff's dictionary skirmish, Opp. 14:9–16:10, is beside that structural point, and Plaintiff loses it anyway. *Steidinger* consulted the contemporaneous 1991 edition — not, as Plaintiff says of *Stockdale*, "the oldest" definitions. Opp. 16:5-10; *contra Steidinger*, 2026 WL 2028517, at *2. Plaintiff's own preferred definitions define a "call" as a communication "by telephone" — and in 1991 a "telephone" was "[a]n instrument for reproducing sounds at a distance." *Id.* The definitions Plaintiff embraces presuppose the device the definitions he ignores describe. Whatever a dictionary might say about "call" in isolation does not trump the interpretive canon that statutes are to be read in context, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) — Plaintiff's own citation, Opp. 13:9-12 — and the context

here is a Congress that wrote "telephone call or message" in one provision and "telephone call" in another.

Plaintiff's remaining structural objections concede more than they contest. He says *Steidinger* "assigns 'call' two different meanings within a single statute." Opp. 18:13-14. It does not. It assigns different meanings to different *words* — "any call" in § 227(b)(1)(A) and "telephone call" in § 227(c)(5) — which is what the presumption of meaningful variation requires. *Steidinger, 2026 WL 2028517, at* *5. His reliance on the fax provisions — "faxes are messages delivered over telephone lines," Opp. 18:10-13 — is a concession, not a rebuttal. Text transmitted over telephone lines is, in the TCPA's own taxonomy, a *message*. Congress "regarded those communications as messages, not calls." *Steidinger*, 2026 WL 2028517, at *3.

### D.   Neither the FCC's rules nor the 2018 saving clause enlarges the private right Congress wrote

Plaintiff invokes a 2018 saving clause — that nothing in the amendments shall "modify, limit, or otherwise affect any rule or order adopted by the Commission" under the TCPA — which he cites as "§ 503(a)(2)." Opp. 9:18, 12:18. To be sure, the clause exists, but precision matters even in citation: it is § 503(d), while § 503(a)(2) is the provision that added the "text message" definition to § 227(e). Pub. L. No. 115-141, div. P, tit. V, § 503(d), 132 Stat. 348, 1094 (2018) (note following 47 U.S.C. § 227); Mot. 14:9-18 & n.2. Read for what it says, the clause *preserves* FCC rules and orders. It does not amend § 227(c)(5). Nor can it transform a regulation into a private cause of action, because "private rights of action to enforce federal law must be created by Congress." Mot. 21:21-27 (quoting *Sandoval*, 532 U.S. at 286.)

At its core, there was nothing on point here to preserve: no FCC rule or order construes § 227(c)(5)'s "telephone call," and the FCC "has not engaged in rulemaking to define the term for the purpose of § 227(c)(5)." *Steidinger*, 2026 WL 2028517, at *4; Mot. 19:6–21:27. A clause that keeps the FCC's rules exactly as they are leaves Plaintiff exactly where he started: rules construing § 227(b), and a private

right that requires a "telephone call." That is neither his reading nor his pleading.

Again, the claimed "mismatch" — do-not-call rules reaching texts without "an enforcement mechanism," Opp. 18:15-21, 13:2-6 — misdescribes both the rules and the remedies. Section 64.1200(e) extends the rules to texts "to the extent described in" the FCC's 2003 Order, which construed § 227(b); and the Registry extension rests on § 227(c)(3)'s "telephone solicitations," not (c)(5)'s "telephone calls." Mot. 20:17–21:20; *Steidinger*, 2026 WL 2028517, at *4.

Enforcement of subsection (c)'s protections against text messages remains available through FCC enforcement and actions by state attorneys general under § 227(g). Section 227(b)(3), meanwhile, supplies a private remedy for qualifying texts sent using an autodialer or artificial or prerecorded voice. Mot. 21:14–22:27. As *Steidinger* put it, "spam messages may be curbed through agency action pursuant to other provisions of § 227." *Id.* at *5. Congress's allocation of enforcement among different actors is not an anomaly; it is the choice it made as *Sandoval* and *Stoneridge* recognize. Mot. 21:21-27.

Finally, Plaintiff asks that "any doubt should be resolved in favor of deference to the agency's longstanding reasonable judgment." Opp. 6:14-16. That is a resort to *Chevron*. After *Loper Bright* and *McLaughlin*, however, courts give an agency's views respect, not control, and determine the statute's best reading de novo, as the Seventh Circuit just did. Mot. 20:5-16; *Steidinger*, 2026 WL 2028517, at *4–5. The best reading requires no tiebreaker here. The words are "telephone call."

## III.   CONCLUSION

Words are scalpels. Plaintiff's opposition rewrites "telephone call" as "telephone solicitation," relabels a § 227(b) holding as a § 227(c)(5) one, and recasts a saving clause as an amendment. The statute Congress wrote — and that the first court of appeals to read it has now enforced — confers a private right of action on the recipient of "telephone call[s]." Plaintiff alleges none. The Court should grant Bonneville's Rule 12(b)(6) motion and dismiss the complaint without leave.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT [FED. R. CIV. P. 12(b)(6)]

Case No. 3:26-cv-01899-JD

Respectfully submitted,

Dated: July 31, 2026

BUCHALTER LLP

By:   /s/ Artin Betpera
          ARTIN BETPERA

*Attorneys for Defendant*
BONNEVILLE INTERNATIONAL
CORPORATION