UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-01480-MWC-SSC Date: September 22, 2026

Title: Rebecka Miller v. S. Brown & Associates, Inc.

Present: The Honorable Michelle Williams Court, United States District Judge

| Daniel Torrez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (DKT. [52])**

Before the Court is Defendant S. Brown & Associates, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Rebecka Miller's ("Plaintiff") Second Amended Complaint ("SAC"). *See* Dkt. # 52 ("*MTD*"). Plaintiff opposed, *see* Dkt. # 53 ("*Opp'n*"), and Defendant replied, Dkt. # 56 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. After considering the papers, the Court **DENIES** Defendant's Motion to Dismiss.

I. <u>Background</u>

This putative class action lawsuit brings one claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.* for Defendant's alleged transmission and initiation of multiple unauthorized text messages to Plaintiff's cellular telephone. *See generally* Dkt. # 39 ("*SAC*"). The SAC alleges as follows:

Defendant S. Brown & Associates, Inc. is a "an insurance administrator that provides point-of-sale automobile insurance programs to auto dealerships throughout the United States, including the State of California." *Id.* ¶¶ 4, 13. Defendant's "Point of Sale Insurance" Program enables an automobile dealership to provide a customer at the time the vehicle is delivered. *Id.* ¶ 14. Defendant conducts its operations through its website, which includes "a dealer-facing portal" where dealerships can "submit enrollment forms, bind temporary coverage, and print customer insurance binders and declaration pages." *Id.* ¶ 15.

National General Insurance Company ("NGIC") insures the Program, while Defendant is the NGIC Program Administrator. *See id.* ¶ 16.

Defendant's program materials represent that after a dealer uses the program for a customer, the customer is contacted and offered continuous coverage. *Id.* ¶ 17. Because Defendant receives the customer information relating to the temporary insurance coverage placed by the dealership, "Defendant possesses or controls the information necessary to identify customers with temporary NGIC coverage, the vehicles covered, the coverage terms, and the dates on which the temporary coverage will end." *Id.* ¶ 18. "Defendant acquires consumer information from dealerships that use Defendant's point-of-sale program, including, customer names, addresses, telephone numbers, vehicle information, coverage information, binder information, and the dates on which the temporary coverage is scheduled to expire." *Id.* ¶ 19.

"Plaintiff purchased a GMC Terrain from an automobile dealership." *Id.* ¶ 20. As part of the transaction, the dealership "placed temporary point-of-sale auto insurance coverage with NGIC through the program administered by Defendant." *Id.* Defendant acquired "Plaintiff's personal and insurance coverage information from the dealership and/or the enrollment records for the temporary NGIC point-of-sale coverage." *Id.* ¶ 21. "Plaintiff did not provide her telephone number directly to Defendant for marketing purposes, did not request a quote from Defendant, and did not ask Defendant to contact her by text message." *Id.* Prior to the termination of Plaintiff's temporary point-of-sale coverage, "and while Defendant's records reflected that the temporary coverage was nearing expiration," Defendant started sending Plaintiff text message solicitations "for the purpose of converting Plaintiff . . . into a longer-term automobile insurance policy." *See id.* ¶¶ 22, 34.

Plaintiff is "the sole subscriber and user of the residential cellular telephone number ending in 0530 (the '0530 Number') that received Defendant's text message solicitations." *Id.* ¶ 11. "Plaintiff's 0530 Number is her residential telephone number used for personal purposes." *Id.* ¶ 41. Since April 15, 2025, this number has been registered with the National Do Not Call Registry ("DNC"). *Id.* ¶ 42. Between November 20, 2025, and November 28, 2025, Plaintiff received multiple unsolicited telemarketing text messages from Defendant, informing her that the "temporary auto insurance with NGIC" for her vehicle ends on December 19, 2025, and advertising that "Direct Auto Insurance, an Allstate brand, could save [Plaintiff] up to 25% on 6 or 12 months of coverage today." *See id.* ¶ 23; *see id.* ¶ 25. The bottom of each text message also contains a phone number and

a website hyperlink where Plaintiff could receive a quote on insurance. *See id.* at 5–7 (providing screenshots of text messages). Each of these messages came from "the same telephone number, (833) 535-3394, a number owned, leased, controlled, and/or used by Defendant." *See id.* ¶ 24.

Defendant receives and maintains information including the customer's identity, the specific vehicle sold, the temporary NGIC coverage, and the expiration date of the temporary binder through its point-of-sale program. Only Defendant and the originating dealership have access to this information. *See id.* ¶¶ 27–29. "Direct Auto Insurance, the company whose permanent insurance products were advertised in the messages, through its counsel, also confirmed to Plaintiff's counsel that the messages were sent by Defendant." *Id.* ¶ 30. The messages were intended to "sell Plaintiff and class members longer-term automobile insurance products for their vehicles," *see id.* ¶ 31, and their repeated nature and uniform content confirm that they "were part of a mass marketing campaign, not a random or isolated communication." *See id.* ¶¶ 32–33.

Plaintiff did not have an established business relationship with Defendant. *Id.* ¶ 35. Plaintiff never purchased goods or services from Defendant, never applied to Defendant for insurance, never requested a quote for insurance from Defendant, never visited Defendant's website, never contacted Defendant, and never asked Defendant to provide continuous coverage. *See id.* Plaintiff never gave Defendant prior express invitation or permission to send telemarketing messages to the 0530 number and never consented to receiving text messages for marketing purposes. *Id.* ¶ 36. Defendant unilaterally acquired Plaintiff's information and telephone number from the dealership where Plaintiff purchased her vehicle. *See id.* ¶ 38.

II. Procedural History

On February 12, 2026, Plaintiff originally initiated this action against Direct General Insurance Agency *d/b/a* Direct Auto Insurance ("Direct General"), Dkt. # 1, and on April 28, 2026, Plaintiff filed her First Amended Complaint ("FAC") against Direct General, Dkt. # 22. Direct General thereafter moved to dismiss the Complaint, Dkt. # 25, which the Court granted on June 8, 2026, Dkt. # 37 ("*Dism. Order*"). In the June 8, 2026 Dismissal Order, the Court held (1) that Plaintiff had not adequately pleaded a theory of direct liability against Direct General; (2) that Plaintiff's vicarious liability theories were conclusory and could not withstand Rule 12(b)(6); and (3) that Section 227(c)(5) of the TCPA pertains to text messages, not just telephone calls. *See id.* at 4–8.

Case 2:26-cv-01480-MWC-SSC Document 13 Filed 09/02/26 Page 4 of 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-01480-MWC-SSC Date: September 22, 2026

Title: Rebecka Miller v. S. Brown & Associates, Inc.

On June 10, 2026, Plaintiff filed the operative SAC, dropping Direct General as a defendant, and adding Defendant S. Brown & Associates, Inc. *See SAC* at 1 n.1. On July 30, 2026, Defendant filed the instant Motion to Dismiss. *MTD*. The Motion is fully briefed and ripe for consideration and disposition. *Opp'n*; *Reply*.

III. Legal Standard

A. Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008). Pleadings that are "verbose, confusing and conclusory" are subject to dismissal. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

A defendant may move to dismiss a claim in the plaintiff's complaint if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

As such, the plausibility standard is a "context-specific task that requires the reviewing court to [1] draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and [2] to "'draw all reasonable inferences in favor of the non-moving party.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can

prove no set of facts to support its claims." *Id.* at 773–74 (internal citation and quotation marks omitted) (cleaned up). However, "[c]onclusory allegations and unreasonable inferences do not provide [ ] a basis" for determining a plaintiff is entitled to relief. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) ("The court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (cleaned up). Nor may the Court accept legal conclusions and threadbare recitals of the elements of a cause of action. *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 723 (9th Cir. 2026) ("Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief.") (citation omitted); *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025); *Doe I v. Cysco Sys., Inc.*, 73 F.4th 700, 713 (9th Cir. 2023) ("Although a reviewing court must accept a complaint's factual allegations as true, the same is not true of legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (cleaned up).

Though resolution of a motion to dismiss under Rule 12(b)(6) is normally confined to the allegations stated in the complaint, the court "may also 'consider [1] materials that are submitted with and attached to the complaint'; [2] 'judicial notice of matters of public record'; and [3] unattached evidence on which the complaint necessarily relies if: [a] the complaint refers to the document; [b] the document is central to the plaintiff's claim; and [c] no party questions the authenticity of the document.'" *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (cleaned up) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)).

## IV. Discussion

### A. Scope of TCPA: Text Messages

Defendant first requests that the Court dismiss the SAC because under *Steidinger v. Blackstone Medical Services*, 182 F.4th 532 (7th Cir. 2026), in which the U.S. Court of Appeals for the Seventh Circuit held that text messages do not give rise to a private right of action under Section 227(c)(5) of the TCPA. *See MTD* at 4–9. Plaintiff responds that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-01480-MWC-SSC Date: September 22, 2026

Title: Rebecka Miller v. S. Brown & Associates, Inc.

binding Ninth Circuit precedent forecloses this question and that text messages constitute "calls" under the TCPA. *See Opp'n* at 9.

In *Steidinger*, the Seventh Circuit concluded that "texts are not calls, so § 227(c)(5) does not authorize the plaintiff's suit." 182 F.4th at 535. As part of the *Steidinger* court's exercise in statutory interpretation, the Seventh Circuit expressly rejected the Ninth Circuit's recent decision in *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026), which held, in part, that "[t]ext messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones." *Howard*, 164 F.4th at 1124. Defendant asks this Court to employ the identical statutory interpretation analysis of *Steidinger* to conclude that Section 227(c)(5) does not cover text messages.

But applying *Steidinger* would necessarily require this Court to reject Ninth Circuit precedent. *See Steidinger*, 182 F.4th at 538 ("[W]e are uncompelled by other circuits' decisions finding that texts are calls within the meaning of the TCPA.") (citing, in part, *Howard*, 164 F.4th at 1124); *see, e.g.*, *Hopkins v. Homelight, Inc.*, No. 26-cv-5017-BHS, 2026 WL 2017320, at *3 (W.D. Wash. July 13, 2026) ("Although HomeLight cites to several district court opinions concluding that § 227(c) does not apply to text messages, each of those decisions is from outside of this Circuit.[] By contrast, district courts applying *Satterfield* and *Howard* within this Circuit have made clear that text messages must constitute calls under § 227(c) as well.") (collecting cases) (footnote omitted). The Court applies the governing law of this Circuit. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Circuit law, a concept wholly unknown at the time of the Framing . . . , binds all courts within a particular circuit, including the court of appeals itself.") (citations omitted). Therefore, "[t]ext messages constitute a call under § 227(c)." *Hopkins*, 2026 WL 2017320, at *4; *cf. Howard*, 164 F.4th at 1123; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Defendant's motion is **DENIED** on this basis.[1]

---

[1] To the extent that Defendant requests certification of this issue to the Ninth Circuit, *see MTD* at 13, Defendant has failed to establish "that the order meets the three certification requirements outlined in [28 U.S.C.] § 1292(b)[.]" *ICTSI Or., Inc. v. Int'l Longshore and Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).

Case 2:26-cv-01480-MWC-SSC Document 61 Filed 09/22/26 Page 7 of 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-01480-MWC-SSC Date: September 22, 2026

Title: Rebecka Miller v. S. Brown & Associates, Inc.

B. Initiation of Text Messages

Defendant next moves to dismiss the SAC for failing to plausibly allege either direct or vicarious liability. *See MTD* at 14–15. Specifically, Defendant contends that the SAC only alleges that Defendant "had some connection . . . to the number from which the messages originated," but fails to allege that Defendant "took the steps necessary to physically place the messages," "pleads no facts about who provisioned the [telephone] number, who operated the platform from which the messages issued, or who caused any individual message to be sent." *Id.* at 14–15. Plaintiff responds that the SAC "alleges that Defendant directly sent six solicitations, owned, leased, controlled, and/or used the originating number, selected Plaintiff for the campaign from its records, and was identified by Direct Auto's counsel as the sender." *Opp'n* at 18 (citing *SAC* ¶¶ 22–24, 30–31).

Section 227(c)(5) of the TCPA confers a private right of action on any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5). Thus, liability under Section 227(c)(5) depends on whether a person or entity "initiate[s]" a "telephone solicitation." 47 C.F.R. § 64.1200(c); *Sapan v. Bloom Ret. Holdings, Inc.*, No. 8:24-cv-01213-FWS-KES, 2025 WL 1718083, at *3 (C.D. Cal. Apr. 14, 2025); *Sapan v. Shore Cap. Corp.*, No. 8:23-cv-01974-FWS-JDE, 2024 WL 4002622, at *4 (C.D. Cal. Aug. 23, 2024). A person "initiate[s]" a phone call when they "either (1) directly make a call, or (2) have an agency relationship with the person who made the call." *Wood v. Farmers Grp. Inc.*, No. 2:22-cv-06103-SVW-MRW, 2023 WL 2628086, at *2 (C.D. Cal. Feb. 7, 2023) (internal quotation marks and citation omitted).

*i. The SAC Plausibly Alleges Direct Liability*

Under TCPA, "[t] here are two potential theories of liability: (1) direct liability; and (2) vicarious liability." *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). "To sufficiently allege direct liability, the complaint must allege facts showing the defendant actually placed calls violating the TCPA." *Shore Cap. Corp.*, 2024 WL 4002622, at *4 (quotation marks and citation omitted); see also Bloom Ret. Holdings, 2025 WL 1718083, at *3 (same). "[D]istrict courts have recognized that something beyond a bare allegation that a defendant initiated a call or text is needed to show that a telephone solicitation is attributable to a particular defendant under the TCPA." *Miholich v. Senior Life Ins. Co.*, No. 21-cv-1123-WQH-AGS, 2022 WL 410945, at *4 (S.D. Cal. Feb. 10, 2022) (citation omitted); *see also Charman v. LeadsMarket.com, LLC*, No. 24-cv-00695-

BAS-MMP, 2025 WL 1883558, at *2 (S.D. Cal. July 7, 2025) (holding that complaint pleaded sufficient facts to state a TCPA violation where it alleged defendant "made the text messages," was responsible for placing the text messages, and where the texts contained a link to the loan website); *Ragsdale v. Leadpoint, Inc.*, No. 2:24-cv-04542-MCS-SK, 2024 WL 5424125, at *2 (C.D. Cal. Nov. 5, 2024) (complaint survived dismissal where it alleged plaintiff received five messages with links to websites that defendant owns, thus "implicat[ing] Defendant in the delivery of these messages"); *Reisman v. Gen Digital Inc.*, No. CV25-01653-PHX-SPL, 2025 WL 2419960, at *2–3 (D. Ariz. Aug. 21, 2025) (TCPA complaint survived dismissal because the defendant's number was "spoofed" and concealed the identity of the caller and because defendant made statements to the SEC that it engages in anonymous direct-to-consumer marketing, thus giving rise to the belief that defendant was directly liable for sending the offending text messages).

The SAC alleges the messages contained information to which Defendant was "privy," including the Plaintiff's identity, the vehicle purchased, the temporary NGIC coverage, and the expiration date of the temporary binder. *See id.* ¶¶ 27–29. The SAC also alleges that Direct General, the company identified in the messages, confirmed through its counsel Defendant was the sender. *See id.* ¶ 30. "[D]istrict courts have recognized that something beyond a bare allegation that a defendant initiated a call or text is needed to show that a telephone solicitation is attributable to a particular defendant under the TCPA." *Miholich v. Senior Life Ins. Co.*, No. 21-cv-1123-WQH-AGS, 2022 WL 410945, at *4 (S.D. Cal. Feb. 10, 2022) (citation omitted).

Drawing all reasonable inferences in Plaintiff's favor, the SAC plausibly alleges Defendant as the initiator given its allegations that the offending text messages contained "the same categories of information that *only* Defendant receives and maintains through its point-of-sale program—information to which "[o]nly Defendant and the originating dealership have access[.]" *SAC* ¶ 27 (emphasis added). And the texts reference a "temporary auto insurance with NGIC," which is a "direct reference to the insurance program that Defendant administers." *Id.* ¶ 28; *see also id.* ¶ 29 ("The messages were also timed to Plaintiff's temporary coverage," which is "information that only Defendant is privy to."). And the messages reference a "temporary auto insurance with NGIC," which is a "direct reference to the insurance program that Defendant administers." *Id.* ¶ 28; *see also id.* ¶ 29 ("The messages were also timed to Plaintiff's temporary coverage," which is "information that only Defendant is privy to.")

Accordingly, the SAC alleges more than merely a "bare allegation" that Defendant initiated the text messages, and further, has demonstrated that "the content of the text messages in this case . . . supports an inference that Defendant sent the text messages to Plaintiff." *Miholich*, 2022 WL 410945, at *4; *see, e.g.*, *Ragsdale*, 2024 WL 5424125, at *2 (denying motion to dismiss TCPA claim because plaintiff alleged facts "implicat[ing] Defendant in the delivery of [the text] messages"); *see also Twombly*, 550 U.S. at 545 ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegality).

The Court therefore **DENIES** Defendant's motion on this basis. Because the SAC plausibly alleges a theory of direct liability, the Court declines to engage with Defendant's vicarious liability arguments. *See MTD* at 16–17.

C. Established Business Relationship Exclusion

Defendant next asserts that the SAC fails to plead that the text messages were "telephone solicitations" under the TCPA because Plaintiff has an "established business relationship" with Defendant. *See MTD* at 17–19.

The TCPA excludes from the term "telephone solicitation" the initiation of a telephone call or message "(A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4); *see also Doughty v. Pelican Inv. Holdings, LLC*, No. 8:24-cv-01926-FWS-ADS, 2026 WL 135474, at *4 (C.D. Cal. Jan. 9, 2026) (same); *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) (same); *D'Agostino v. Circle K Stores Inc.*, No. CV-26-01225-PHX-JAT, 2026 WL 1098239, at *5 (D. Ariz. Apr. 22, 2026) (same). An established business relationship requires demonstrating the existence of a "voluntary two-way communication between a person or entity . . . on the basis of the subscriber's purchase or transaction with the entity." 47 C.F.R. § 64.1200(c)(2)(ii); *Doughty*, 2026 WL 135474, at *4.

Defendant argues that because Plaintiff's purchase of her vehicle "ran through SBA's own infrastructure," the SAC necessarily pleads every element of the established business relationship exclusion. *MTD* at 18. The SAC alleges Plaintiff purchased a vehicle, and, without having applied for insurance or otherwise contacting Defendant, the

Case 2:26-cv-01480-MWC-SSC Document 63 Filed 09/22/26 Page 10 of 11


automobile dealership placed insurance coverage on the vehicle through Defendant's Program with NGIC. *See SAC* ¶¶ 20, 35. Thus, the SAC does not plead a voluntary two-way communication based on Plaintiff's "purchase or transaction with" Defendant. 47 C.F.R. § 64.1200(c)(2)(ii); *see also Abboud v. Circle K Stores Inc.*, No CV-23-01683-PHX-DWL, 2025 WL 307039, at *13 (D. Ariz. Jan. 27, 2025) ("Plaintiff did not complete any purchases or transactions with Defendant and did not submit any inquiries or applications to Defendant. . . . Defendant may have entered into an established business relationship with the unknown third person. . . but that encounter did not involve any purchase, . . . or application by Plaintiff herself."). Accordingly, the Court **DENIES** Defendant's motion on these grounds.

D. Injunctive Relief

Finally, Defendant seeks dismissal of the SAC's request for injunctive relief and for enhanced damages. *See MTD* at 19–20. Plaintiff did not respond to these arguments. *See generally Opp'n*.

A "violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified" to establish Article III standing. 50 F.4th 1217, 1222 (9th Cir. 2022) (emphasis in original) (citation omitted); *Griffin v. Am-Amicable Life Ins. Co. of Tex.*, No. 6:24-cv-00243-MC, 2024 WL 4333373, at *6 (D. Or. Sept. 27, 2024) (concluding plaintiffs sufficiently alleged imminent risk of future harm entitling them to injunctive relief because the complaint alleged defendant engages in unsolicited marketing and defendant had not made assurances it would abstain from allegedly wrongful conduct). "Other courts to consider this issue with similar facts have held that plaintiffs had standing because it is plausible that Plaintiffs may receive additional calls in the future, particularly where, as here, a defendant has made no assurances that it will abstain from the allegedly wrongful conduct." *Griffin*, 2024 WL 4333373, at *6 (collecting cases) (cleaned up); *see also Bell v. Hawx Servs., LLC*, No. 2:24-cv-00825-DC-DMC, 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025). Without such assurances made by Defendant or otherwise pleaded in the SAC, the Court cannot conclude that Plaintiff lacks standing to request injunctive relief. Defendant's request is therefore **DENIED**.

E. Treble Damages

Finally, Defendant moves to dismiss the SAC's requested treble damages, asserting that the SAC's request for enhanced damages fails to address Defendant's "knowledge of

Plaintiff's registry listing or any conscious disregard of the regulations." *MTD* at 20; *see SAC* ¶ 61.

"Where a defendant violates the [Do Not Call] List protections of the TCPA, i.e., Section 227(c), a plaintiff is entitled to receive up to $500 per violation." *Carrodine v. Zupax Mktg., LLC*, 351 F.R.D. 164, 169 (D. Nev. 2026) (citing 47 U.S.C. § 227(c)(5)(B)). "This amount may then be trebled up to $1,500 per violation if the TCPA is willfully violated." *Id.* (citing, in part, 47 U.S.C. § 227(c)(5)(C)). "A defendant willfully violates the TCPA where it 'knew that it was engaging in the conduct that gave rise to liability.'" *Id.* (citation omitted).

Though the SAC does not specifically request trebled damages in its Prayer for Relief, it alleges Defendant's willfulness is a question of law and fact that is common to the putative class, and further provides that Plaintiff and the proposed class are entitled to trebled damages. *See id.* ¶¶ 50, 61. Moreover, the SAC alleges inferences that Defendant knew it was violating the TCPA. *See, e.g.*, *id.* ¶¶ 31 (alleging that Defendant "selected Plaintiff and class members for the text campaign because Defendant's point-of-sale records showed that their temporary NGIC coverage was approaching expiration."), 32–34. "Courts within this Circuit have repeatedly found similarly conclusory allegations regarding the willful or knowing nature of TCPA violations to be sufficient to withstand a motion to dismiss." *Rogers v. Assurance IQ, LLC*, No. 2:21-cv-00823-TL, 2023 WL 2646468, at *7 (W.D. Wash. Mar. 27, 2023) (complaint alleged that "Defendants' violations of § 227(c) were knowing or willful") (cleaned up); *Sapan*, 2025 WL 1718083, at *8; *Ewing v. Freedom Forever LLC*, No. 20-cv-880-JLS (AHG), 2021 WL 1087100, at *6 (S.D. Cal. Mar. 22, 2021). The Court therefore **DENIES** Defendant's motion regarding this request for relief as well.

V. Conclusion

For the foregoing reasons, the Court **ORDERS** that Defendant's Motion to Dismiss (Dkt. # 52) is **DENIED**.

**IT IS SO ORDERED.**

:

**Initials of Preparer** DT